### MARY A. PARKER *vs.* WILLARD S. DUDLEY.

Worcester.　October 6. — 30, 1875.　WELLS & AMES, JJ., absent.

At the trial of a complaint under the bastardy act, the respondent offered evidence tending to show that the complainant, during pregnancy, had said that A. was the father of the child, and that B. had sexual intercourse with the complainant in July, 1873, when the child was begotten. The complainant testified, in direct examination, that she had never had sexual intercourse with any other person than the respondent, and upon cross-examination denied that in July, 1872, she was engaged to be married to A. and remained so engaged until after the child was begotten; that A. at the time of the engagement gave her an engagement ring, and that she had ever had sexual intercourse with B. The defendant then offered evidence that in July, 1872, the complainant said that she was going to marry A. as soon as he returned from the West, and exhibited a ring which she said had been given her by A. as an engagement ring; and that in 1872, the complainant and B., while living together as household servants, appeared friendly and intimate, and that B. was repeatedly in her bedroom with her in the night time. *Held*, that the

question whether this evidence should be admitted or excluded, was largely within the discretion of the presiding judge, and that its exclusion afforded the defendant no ground of exception.

COMPLAINT under the bastardy act, Gen. Sts. *c.* 72, charging the respondent with being the father of a bastard child, alleged to have been begotten on or about July 6, 1873, and born March 16, 1874.

Trial in the Superior Court, before *Aldrich*, J., who, after a verdict of guilty, allowed a bill of exceptions in substance as follows:

The respondent denied the charge against him, and contended that one Waldo Parker and one Albert Matthews had intercourse with the complainant within the period of gestation, before the birth of the child, and introduced evidence that the complainant, during pregnancy, stated in substance, that Parker was the father of the bastard child, and also introduced evidence that Matthews had sexual intercourse with the complainant on July 3, 1873.

The complainant, upon her direct examination, in answer to a question asked by her counsel, without objection, testified that she had never had sexual intercourse with any one, or upon any other occasion, than with the defendant on said July 6. Upon cross-examination, the complainant was asked whether she was not more intimate with Waldo Parker than with other men, and was not, in 1872, engaged to be married to him, and remained so engaged till after the child was begotten, and whether Parker did not give her an engagement ring on or previously to July, 1872, all of which the complainant denied. The defendant offered evidence tending to show that the complainant, in July, 1872, said that she was going to marry Parker as soon as he came from the West, and at the same time exhibited a finger ring which she said had been given to her by him as an engagement ring; but upon the complainant's objection the testimony was excluded.

The complainant, upon cross-examination, denied having had intercourse with Matthews, and said that she never liked him and he was always disagreeable to her. The respondent offered evidence tending to show that while the complainant and Matthews were living together as household servants in 1872, they appeared friendly and intimate with each other, and that Matthews was

repeatedly in her bedroom with her in the night time ; but upon the complainant's objection the evidence was excluded.

To the above rulings, and to the exclusion of the evidence offered, the defendant alleged exceptions.

*G. A. Torrey*, for the respondent.

*F. P. Goulding*, for the complainant.

DEVENS, J.  The respondent had offered evidence tending to show that one Parker was the father of the child, and also that the complainant had sexual intercourse with one Matthews in July, 1873, in which month the child was begotten.  In confirmation of this evidence, he desired to show that she had said in July, 1872, that she was engaged to Parker, and also that in 1872 she was friendly and intimate with Matthews, and that he was repeatedly with her in her bedroom in the night time, they being then fellow servants.  So far as this evidence tended to show an engagement to Parker or intimacy with Matthews in 1872, which the complainant had denied upon her cross-examination, it was an attempt to contradict her upon an immaterial question, and rightly rejected.  And even if it could be inferred, (which inference it would be difficult to make in favor of the excepting party, who should state all facts necessary to sustain his exceptions,) that this evidence further tended to show that Matthews was in her bedroom at such times and under such circumstances as to excite well grounded suspicion and to indicate improper intimacy, which alone would give it any significance, it was so remote in point of time that it might properly have been rejected by the presiding judge.  Prior acts of familiarity and criminal intercourse between the parties may be shown where such intercourse at a particular time is charged.  *Thayer* v. *Thayer*, 101 Mass. 111.  But as evidence of this description does not directly tend to prove the act as charged, but only indirectly by showing the disposition of the parties and the character of the relation between them, it should refer to a period so near in point of time as to leave it fairly to be inferred that such disposition and relation continued.  The reception of such evidence must, therefore, be largely limited by the discretion of the judge who tries the cause, and we cannot say that, in rejecting evidence of this nature relating to a time one year before, any error was made.

Nor could the fact that the complainant, without objection, had been permitted to testify that she had never had sexual intercourse with any one other than the respondent entitle the respondent to contradict this by proof of acts of such intercourse with persons other than himself at a time so long previously that the child could not then have been begotten. In a proceeding of this nature, the character of the complainant for chastity is not put in issue, and such evidence is irrelevant. *Phillips* v. *Hoyle,* 4 Gray, 568. *Eddy* v. *Gray,* 4 Allen, 435. By failing to object to evidence on behalf of the complainant which was incompetent, the respondent could not as of right claim to contradict it. 1 Greenl. Ev. § 449. *Commonwealth* v. *Fitzgerald,* 2 Allen, 297. Whether, if he had been permitted to contradict it, the party first availing himself of such evidence could have objected thereto, might present a different question. *Brown* v. *Perkins,* 1 Allen, 89. *Exceptions overruled.*