## STATE v. HERBERT M. CHRISTENSEN.
## JOYCE LIND, FORMERLY JOYCE LUHM, RESPONDENT.[1]

April 18, 1952.

No. 35,692.

*Silver, Green & Goff,* for appellant.

[1]Reported in 53 N. W. (2d) 117.

*J. A. A. Burnquist,* Attorney General, *Thomas J. Naylor,* County Attorney, and *Ralph J. Olson,* Assistant County Attorney, for the State.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for amended findings of fact and conclusions of law or for a new trial in a suit to determine the paternity of an illegitimate child born to complainant on August 27, 1950. Defendant expressly waived a jury, and the case was tried to the court.

At the time involved, complainant, who was then Joyce Luhm, lived with her parents on the north shore of Lake Superior. The parents owned and operated a hunting lodge. Defendant became acquainted with Mr. and Mrs. Luhm, Joyce's parents, in August or September 1949. He had never met Joyce until the night of November 11, 1949, when, together with a friend, he went to the Luhm lodge to hunt deer. Joyce had previously written defendant suggesting that she would like to be his guide while deer hunting.

The morning after his arrival at the lodge, defendant, his friend, Mr. Luhm, and Joyce went hunting. When they arrived at the place where they were to hunt they paired off, defendant and Joyce going together. Both couples hunted in the woods about five or six blocks from the Luhm home, but were separated from each other by a distance of about two or three blocks. Complainant testified that nothing happened the first morning. They all went home for lunch and again went hunting in the afternoon, when the two couples paired off as before. Complainant claims that about 2:30 or 3 p. m. she had intercourse with defendant. The next day they all hunted, and defendant and Joyce were together again. She claims that they again had intercourse at that time.

Defendant lives in St. Paul. After he left for home, Joyce wrote him numerous letters professing her love for him. He answered only once. He sent her a Christmas card and a wallet. On January 6, 1950, Joyce went to Minneapolis to visit friends. Defendant called on her at her friends' apartment, and on the next evening

defendant, his father and mother, Joyce, and her friends went out for dinner and dancing together. The next evening Joyce had dinner at the home of defendant's parents. Defendant took her back to Minneapolis, and she claims that she had intercourse with him in his car on the way home. She claims that she told defendant when in Minneapolis that she was pregnant and that they discussed getting married. She did not mention her condition in any of her letters to defendant, but explained this by stating that defendant had requested that she refrain from mentioning it in letters so that his parents would not find out about it.

On February 15, 1950, defendant wrote Joyce that he was engaged to be married, and he returned to her a photograph she had sent him. In reply, she wrote him a letter of congratulation.

Joyce did not tell her parents of her condition until in June 1950. She then went down to St. Paul and had a talk with defendant's father. A short time later, she again went to St. Paul with her father, and the two of them, together with defendant and his father, met and discussed the matter in the office of defendant's attorney.

Defendant admits hunting with Joyce on both occasions when the acts of intercourse are alleged to have taken place. He denies ever having had intercourse with her. His contention on this appeal is that the state has failed to prove its case by a fair preponderance of the evidence.

As is usual in this type of case, we have charges made by the complainant and denials by defendant. The outcome of the case depends mainly on whether the trial court believed the testimony of complainant or the denials of defendant. The credibility of the witnesses is a matter resting almost entirely with the trier of facts, and we cannot say that the testimony of complainant was so obviously untrue that it was not entitled to credence. The case differs from many others in that there is no dispute over the claim that the parties were alone together in the woods at the time when the alleged acts of intercourse took place. Defendant claims that the weather was such that it was improbable that such acts would be indulged in on the two occasions mentioned and that complain-

ant's clothing was such that it would likewise militate against it. The record shows that according to the United States weather bureau in Duluth it was 34 to 38 degrees in downtown Duluth on November 12 and that there was .36 of an inch of precipitation at the downtown station and .30 of an inch at the airport station. On the following day, it was 33 to 39 degrees in downtown Duluth and 30 to 38 degrees at the airport, with a trace of precipitation at the downtown station and .01 of an inch of precipitation at the airport. It is admitted that there might be some variation in both temperature and precipitation between Duluth and the place where the parties were hunting. On both occasions, Joyce wore a hunting outfit consisting of overalls, over which she wore a pair of ski pants. She stated that she voluntarily removed her trousers, with defendant's help, at the time the acts are alleged to have taken place.

While the weather may not have been ideal, we do not believe that it was either so cold or so damp as to make it improbable that two people desiring to consummate the act here involved would suffer any great hardship on account of the weather or be long restrained, on account thereof, from satisfying their desires were they of a mind to do so. Nor do we believe that the clothes worn by complainant would be a barrier to the completion of the act.

While complainant's conduct after the time when defendant left for home might cast some doubt on the truth of her later testimony, it is nearly always true in cases of this kind that in an attempt to keep matters such as this secret from parents and friends those involved may say or do things which seem inconsistent with statements made later when conditions become more evident. There are some facts which corroborate the claims of complainant. Defendant does not deny that while they were in the woods together he put his arms around Joyce and kissed her and that in their home she sat on his lap. When defendant left the Luhm home, he embraced her and kissed her goodbye in the presence of all the other people who were there. He also admits that when she was in Minneapolis they did some "necking."

To show the improbability of the acts here alleged having taken place, defendant also points to the fact that the two hunting parties were only about two or three blocks apart and that they did not know when they might meet. We are not prepared to say that a distance of two or three blocks in the woods is insufficient insulation to furnish the safeguards two people would consider necessary to complete the act here involved were they of a mind to do so. Under most circumstances, it would be quite unlikely that the other parties would stumble onto the two so occupied, except by accident.

That Joyce was infatuated with defendant cannot well be denied. That she was a willing participant in the act is also admitted. The question here involved is one of fact, and we believe that the court's findings are amply sustained by the evidence. No good purpose can be served by reciting in more detail the evidence in support of, or which might cast doubt upon, the findings of the court. Neither would any good purpose be served by trying to reconcile the cases cited by defendant. We have examined all these cases and are satisfied that they do not compel a finding opposite to that of the court. Each of these cases must stand on its own facts.

Affirmed.