STATE v. HARVEY STEVENS.

80 N. W. (2d) 22.

December 7, 1956—No. 36,841.

*Friedman & Friedman,* for appellant.

*Miles Lord,* Attorney General, *Thomas J. Naylor,* County Attorney, and *George B. Sjoselius,* Assistant County Attorney, for respondent.

MATSON, JUDGE.

Appeal in a paternity proceeding from an order denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

This case involves a suit to establish the paternity of a child born out of wedlock to complainant on June 10, 1955. The jury returned a verdict of guilty. Defendant is a 35-year-old married man with a family. Complainant is single and 22 years of age. Both parties live in Duluth, and defendant has known complainant since she was a young girl.

In either the fall of 1949 or the summer of 1950, complainant, who was then about 17 years old, moved into defendant's home and began full-time work in caring for defendant's children and in performing general household duties. Defendant's wife was employed outside the home. Prior to this time complainant had worked for defendant's family in a part-time capacity while living at her own home. Defendant admitted that he first had intercourse with complainant in January of 1950 and continued thereafter to do so once or twice a week. In March of 1951 complainant left defendant's home and went home, later moving to an apartment, but the parties continued their illicit intercourse as before.

Defendant claimed that he stopped having relations with her in June of 1954. He asserts that he ceased having relations because the complainant was going with other men. Medical testimony established that the time of conception was between August 1, 1954, and October 1, 1954. Defendant testified that he again frequented her company after October 1, 1954, and continued to do so until about Christmas time. He admitted he again had relations with her during this latter period but denied knowing that she was then pregnant.

Complainant testified that her last menstrual period was about September 11 or 12, 1954, and that she had relations with defendant after the period was over and continued to have relations with him until November (all this is in 1954) when she told him that she had missed her last two periods and he replied, "I think you are pregnant." Complainant then said that she had not seen defendant since that time. On cross-examination she admitted that, contrary to her testimony on direct, she had seen the defendant on four occasions since November. Complainant denied ever having intercourse with any man other than the defendant.

It was also brought out on cross-examination, that complainant had associated with a Tex Podvin, but complainant denied ever having intercourse with him and further denied that she had seen Tex since June 1954. However, on cross-examination she admitted that on September 11 or 12, 1954, she had spent at least part of an evening on a couch with Tex at the home of Mrs. Wagner, the defend-

ant's sister, where she was taking care of the Wagner home and children. Mrs. Wagner's daughter Joan, 13 years old, testified that she witnessed Tex and the complainant on the couch on the evening referred to above and that they were having intercourse. On cross-examination, she stated that the act of intercourse which she witnessed lasted for about an hour and a half. Joan's sister, Phyllis, who was 16 years of age, was also present in the home on the evening referred to above but testified that she did not pay much attention to what was going on in the other room, although she knew that Tex was on the couch with the complainant.

Plaintiff then introduced, through the defendant, a document which he had signed under oath before a representative of the St. Louis County Welfare Board, whereby he acknowledged that he was the father of complainant's child. The document was admitted over defendant's objections that it was an offer of compromise and hence inadmissible. Defendant then testified that he signed the document only because the welfare bureau official told him that, if he signed the paper, the affair would be kept quiet. The court, however, refused to let defendant's wife testify as to what the defendant had told her the morning he signed the paper. The defense contended her testimony was admissible to show defendant's state of mind and thus an exception to the hearsay rule.

■ Does the evidence sustain the verdict? As is usual in most cases of this nature, complainant states flatly that defendant is the father of her child, and the defendant emphatically denies he is the father. Since conflicts in evidence, and questions as to the credibility or incredibility of a witness, are to be resolved by the trier of fact, the outcome depends mainly on whether the jury believes the testimony of the complainant or the defendant's denials.[1] Defendant here has admitted frequent illicit relations with complainant from January 1950 until June 1954 but denies any relations from June to October 1954, a period which coincides neatly with the medical testimony which established almost this same period as the time during which conception took place. Complain-

[1]State v. Christensen, 236 Minn. 390, 392, 53 N. W. (2d) 117, 118.

ant, however, contradicted defendant's testimony and testified that defendant had relations with her just after her period in September and that these illicit relations continued until November. Where there is conflicting evidence supporting the claims of the respective parties to a paternity proceeding, the question is one of fact for the jury.[2]

■ We have not overlooked that, on cross-examination, complainant admitted, contrary to her testimony on direct, that she had seen defendant four times since November and that she had been with Tex Podvin subsequent to June 4, 1954, and had in fact spent some time with him on a couch in the home of defendant's sister. Although the rule is that, if the jurors believe that a witness has *knowingly and wilfully* testified falsely as to a material fact, they *may* disregard his entire testimony except as corroborated by other credible evidence, the credibility of such a witness is, nevertheless, for the jury and they may believe or disbelieve his testimony as to other facts as they deem it worthy or unworthy of belief.[3] Bearing in mind that the credibility of witnesses is for the jury and that we must take the conflicting evidence in the light most favorable to the verdict, we cannot say that the testimony of the complainant was so obviously untrue that it was entitled to no credence and that the evidence as a whole does not sustain the verdict.

■ Was it error for the trial court to admit in evidence, plaintiff's exhibit A, an affidavit wherein defendant admitted on oath that he was the father of complainant's child? Defendant objected to its reception on the ground that the instrument was an offer made to a representative of the county welfare board to compromise the illegitimacy charge (made in the course of negotiations for the settlement of the claim against him when he denied paternity) and that it was made to obtain for himself and his family freedom from embarrassing publicity. The rule that prohibits either litigant

[2]State v. Hanke, 202 Minn. 47, 277 N. W. 364; State v. Solie, 137 Minn. 279, 163 N. W. 505.

[3]State v. Henderson, 72 Minn. 74, 74 N. W. 1014; State v. Schueller, 120 Minn. 26, 138 N. W. 937; Mason's Dunnell, Minn. Practice, § 1383; 20 Dunnell, Dig. (3 ed.) § 10345.

from using offers of compromise made by the other as evidence of an admission of liability has no application. The affidavit herein is an unqualified admission of paternity and bears none of the ear-marks of a compromise of any disputed claim. It is a generally accepted principle that an admission of fact made in the course of negotiations is not privileged unless it is made hypothetically— e. g., "we admit for the sake of discussion only"—or is expressly stated to be made "without prejudice" or unless it is so inseparably connected with an offer of compromise that it cannot be correctly understood without reading the two together. McCormick, Evidence, § 251.[4] See, 3 Dunnell, Dig. (3 ed.) § 1517. The admission of pater-nity was wholly unqualified and not made either hypothetically or without prejudice, and it was not made as an integral part of, or as interwoven with, any recognizable offer of compromise.[5] In sign-

[4]In Boylan v. McMillan, 137 Iowa 142, 114 N. W. 630, we have an ex-ample of admission inseparably connected with an offer. It was held therein that the recitals in a letter of compromise could not be separated from the offer.

[5]In two recent decisions, Harrison v. District of Columbia (D. C. Mun. App.) 95 A. (2d) 332, and Pitts v. United States (D. C. Mun. App.) 95 A. (2d) 588, (both opinions written by Associate Judge Hood within a period of a few weeks), we have contrasting examples in legitimacy proceedings of what constitutes an offer of compromise and what does not. In the Harri-son case, the court said there was clearly an offer of compromise and not an admission of liability since the defendant therein had denied paternity but offered to pay $1,000 to settle the matter.

In the Pitts case, the alleged father entered into a written agreement whereby—without indicating whether he was the father—he agreed (95 A. [2d] 589) "to make voluntary contribution" for the support of the child in the form of monthly payments to continue until the child was fourteen years of age, and complainant agreed to "withhold further prosecution" so long as he made such payments. The agreement reserved to the alleged father "the right to plead formally to aforesaid charge * * * if and when it becomes necessary to further proceed in this cause." The court said the purpose of the reservation was not clear since at the time the agreement was made the alleged father had already been arraigned and had pleaded not guilty to the charge. The court held the superfluous reservation of

ing the affidavit, defendant merely yielded to a claim of paternity, and by doing so, he in no manner compromised his resulting liability of support or of any other obligation connected with his admitted paternity status. He compromised nothing but merely established his liability. In People v. Gill, 247 Mich. 479, 480, 226 N. W. 214, the court observed that the rule excluding offers of compromise does not "cover the admissibility of admissions of guilt made as statements of fact nor operate to preclude such testimony when properly presented." Since no compromise was involved, the affidavit was properly received in evidence.[6]

 After the affidavit was admitted in evidence, the trial court erred in excluding the testimony of defendant's wife as to his statements which reflected his state of mind regarding the intent and purpose with which he signed the affidavit. Whenever a person's intention is relevant to show with what purpose he performed a certain act, his statements which are indicative of his then state of mind and which were made about the time in question—or at a time which the trial court in its discretion finds is not too remote—are admissible.[7] Where the ascertainment of the state of mind is an end in itself, the justification for the use of hearsay declarations is at its strongest.[8]

---

"the right to plead formally" hardly transformed the agreement to one of compromise.

The agreement was, however, received in evidence on another ground. The court said that assuming an offer of compromise were involved, the exclusionary rule of privilege, nevertheless, had no application, because that rule relates only to offers of compromise and does not apply to a situation (such as the one before the court) where the offer has been accepted· and the offer and acceptance have merged into an agreement which has been breached.

[6]No issue has been raised, and none could very well be raised, that his admission was obtained by duress, under any threat to expose him to embarrassing publicity.

[7]Cyrus v. Cyrus, 242 Minn. 180, 64 N. W. (2d) 538, 45 A. L. R. (2d) 1002; 7 Dunnell, Dig. (3 ed.) § 3293; McCormick, Evidence, § 269.

[8]McCormick, Evidence, § 269.

Although the wife's testimony as to defendant's state of mind was not too remote and was relevant, we cannot say, in the light of the evidence as a whole, that its exclusion was prejudicial. The defendant personally testified as to the state of mind or intent with which he signed the affidavit and the repetition of this testimony by the wife could not have reasonably affected the jury's verdict. It is plain that, if the jury did not believe the defendant, their attitude would not be changed merely because the wife testified that her husband expressed this intention. This is especially true because of the self-interest of the wife. In fact it seems clear as a practical matter that the defendant got most, if not all, the benefit of her excluded testimony since the jurors must have realized that the defense would not put her on the stand unless she was going to repeat the testimony that her husband had already given. In another sense, her proposed testimony was merely cumulative of testimony already given. Where evidence is of no material weight, or where it is merely cumulative of testimony already given by another witness, error in the exclusion of the testimony is nonprejudicial and does not justify a new trial.[9]

■ We find no error in the trial court's reception of evidence of the original act of seduction in 1950—when complainant was 17 years old—and of the other acts of illicit intercourse which continued thereafter and were almost equally remote. In State v. Becker, 231 Minn. 174, 179, 42 N. W. (2d) 704, 708, we said:

"It has often been held that evidence of this kind is admissible to show the intimacy and disposition of the parties as bearing upon the probability of intercourse at the times stated in the complaint. * * * It is true that in the cases cited the alleged occurrences were not as remote as in the instant case. It is for the trial court in its discretion, however, to determine whether the remoteness of time of the occurrence renders such testimony inadmissible or otherwise.

---

[9]State v. Cavett, 171 Minn. 222, 213 N. W. 920; Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; 14 Dunnell, Dig. (3 ed.) § 7184. The case of State v. Amrine, 198 Iowa 968, 200 N. W. 602, is of no significance since there was no other testimony on the point in question.

* * * In the instant case, the age of the complainant at the time would appear to have a bearing on the credibility of defendant as to his subsequent conduct with her."

It is not error in a paternity proceeding for a trial court, in its discretion, to admit into evidence testimony as to the original act of seduction, which occurred about five years before when the complainant was only 17 years of age, and which act was admittedly followed by a succession of similar illicit acts extending over the period terminating a short time after complainant became pregnant, when the court instructs the jury that evidence of such remote act or acts is to be considered for the purpose of passing on the credibility of the complainant and of the defendant. We here find no abuse of discretion.

We find no prejudicial error in the additional instructions given to the jury when it returned to the courtroom and asked the following question: "Were we instructed that if we believed that the complaining witness had sexual intercourse with any other person during that time, 310 to 250 days prior to the birth of the child, that we were to bring in a verdict of not guilty?" Defendant is in error in assuming that a yes or no answer would have been sufficient. A simple no answer might have tended to deprive the defendant of the benefit of the original instruction which was that, if the jury found that the complainant had had intercourse with another man at or about the time the child must have been begotten, and about the time she testified to having intercourse with the defendant, so that it would be unable to determine clearly who begot the child, it must find the defendant not guilty. A more detailed answer or explanation was proper. Although the first sentence of the trial court's answer was somewhat misleading, the court corrected itself when it said: "In other words, you have to be satisfied by a fair preponderance of the evidence that her pregnancy resulted from intercourse with this defendant and from no one else." The correctness of a court's charge to the jury is not to be evaluated on a piecemeal dissection basis, but in the light of the instructions as a whole.[10] Taking the court's answer as a whole, no prejudicial error occurred.

---

[10]State v. Cavett, 171 Minn. 222, 224, 213 N. W. 920, 921.

Although certain questions asked by the trial court of the witness Joan Scandin and of the defendant went further than necessary in clarifying the testimony which had already been given, we cannot say that the court assumed a partisan position which undermined the credibility of the testimony of these witnesses or prejudiced the defendant before the jury.

Defendant introduced into evidence a letter written by the complainant to a niece of the defendant who later testified for the defendant. The court directed that the letter be exhibited to the jurors for their examination. No error could have occurred since defendant's counsel stated he had no objection if the court read the letter to the jury. Upon cross-examination, the defense asked questions of the complainant which carried by implication the assumption that the letter constituted an admission that she had had intercourse with Tex Podvin. The trial court properly ruled that the assumption was improper and then specifically stated that it was for the jurors to conclude what the letter meant. The ruling was correct and no error occurred.

The court's opening comments to the jury panel contain no prejudicial error. Although the court used the phrase quasi-criminal, it stated specifically that the action was not a criminal case. We decline to pass on the question whether it was proper to tell the jury in effect that the complaining witness was not a party in interest. A careful examination of the record shows that the trial court correctly explained the nature of the action and that no statement was made to the effect that the complaining witness was not a party in interest. Whether it would have been error to do so, we need not determine.

We find no prejudicial misconduct on the part of plaintiff's counsel in his argument to the jury.

The order of the trial court is affirmed.