COMMONWEALTH vs. EDWARD J. MANNING.

Norfolk.   December 3, 1974. — May 2, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Rape.   Unnatural and Lascivious Act.   Evidence,* Reputation, Rele-
vancy and materiality.

Where a defendant was convicted on charges tried together of rape,
sodomy, unnatural and lascivious acts and assault and battery, but
the rape conviction had been reversed by the Appeals Court
because evidence of the complainant's poor reputation for chastity,
which was relevant to the issue of consent to the alleged rape, had
been improperly excluded, the defendant's convictions on the other
charges should also have been reversed because if the jury, after
hearing the excluded testimony, had determined that the com-
plainant consented to intercourse and thus had lied about the
alleged rape, they might well have disbelieved her uncorroborated
testimony on the other charges [607-612]; BRAUCHER, J., dissenting,
stated that the defendant's convictions on the other charges should
not be reversed because the improperly excluded testimony bore
only on the issue of consent as a defense to the rape charge and
could not have been offered to impeach the complainant's ver-
acity [613-617].
At a trial on charges of rape, sodomy, unnatural and lascivious acts,
and assault and battery, where the trial judge had erroneously
excluded a defense witness's testimony to the complainant's poor
reputation for chastity, on the ground that the witness was not
qualified to offer such testimony at all when the witness had in
fact demonstrated sufficient knowledge of the matter, there was no
merit to the contention that the defendant's failure to indicate the
proposed use of the excluded evidence on the charges other than
rape foreclosed him from using the excluded testimony to urge
reversal of the other charges, because the Commonwealth was not
prejudiced by the defendant's failure to specify the proposed use.
[612-613]

INDICTMENTS found and returned in the Superior Court on September 29, 1972.

The cases were tried before *McNaught*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Margaret D. McGaughey* for the defendant.

*Robert B. Russell*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. On the trial of the defendant on charges of rape, sodomy, unnatural and lascivious acts, and assault and battery he offered evidence through a witness of the complainant's poor reputation for chastity. After a voir dire, the trial judge, over objection and exception, excluded this evidence on the ground that the witness did not have sufficient knowledge of the complainant's reputation to testify about it. The jury convicted the defendant of all the crimes charged. [1]

Reviewing these convictions on bill of exceptions, the Appeals Court held that the trial judge committed error in excluding the proffered reputation evidence, and this view is now accepted by the Commonwealth. [2] Since the

---

[1] The defendant was sentenced to five to ten years at the Massachusetts Correctional Institution at Walpole on the rape conviction, five to seven years on the conviction of sodomy, and three to five years on the conviction of unnatural acts, these sentences to be served concurrently. The assault and battery conviction was filed.

[2] The witness, a married woman, testified that she had lived in Canton, the complainant's home town, for nine years, had regularly seen the complainant at a tavern for five years until shortly before the trial, had had fifteen to twenty conversations about the complainant's chastity with people in the area who knew her, and had overheard other conversations on the matter at the tavern. The Appeals Court on this showing ruled that "the witness demonstrated knowledge of the complainant's general reputation for chastity," and that further inquiry into the basis and extent of such knowledge, while permissible, "could only properly go to the weight to be accorded her testimony," not to its admissibility. *Commonwealth* v. *Manning*, 2 Mass. App. Ct. 838, 839 (1974).

reputation evidence was, according to established law, relevant on the issue of consent to the alleged rape, *see Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966), the Appeals Court reversed the rape conviction, and the Commonwealth accepts this consequence. But the court did not disturb the convictions of the other crimes, believing these to be "not affected" by the error: the excluded testimony, said the court, "bore only on the issue of consent, not on veracity." 2 Mass. App. Ct. 838, 839 (1974) (rescript).[3]

We granted the defendant's application for further appellate review. He urges two reasons for reversal of the three other convictions. He contends, first, that the excluded evidence could properly have been considered by the jury as bearing on the credibility of the complainant whose testimony as to the events in question was vital to the Commonwealth's case and was largely uncorroborated. For if the jury, considering and giving weight to the reputation evidence on the rape charge, had found consent on the part of the complainant, as they might have done, this would have amounted to disbelief of an important part of the complainant's testimony, and this disbelief could quite naturally have led the jury to disbelieve the complainant's further testimony that the other acts had been committed on her.

As a second argument, the defendant, relying on our indication in *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974), that consent is a defense to the charge of unnatural acts committed in private, asserts that the excluded evidence was directly relevant to the other crimes here charged, just as it was to rape.

---

[3] The defendant did not urge consent as a defense to the unnatural acts, sodomy, or assault and battery charges at the trial or before the Appeals Court. The trial and the Appeals Court decision occurred before our decision in *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974), recognizing consent by an adult as a defense to a charge of unnatural and lascivious acts privately engaged in.

Summarized, the evidence at the trial was as follows. John Fralick, a Canton policeman, went to the home of the complainant in Canton in response to a call at 5:30 A.M. on May 24, 1972. The complainant, her husband, and their several children were present. The complainant told a story of a young man named John forcing his way into her car while she was stopped at a traffic light about midnight, making her drive around until 5:20 A.M., hitting her, and attempting to assault her sexually. When interviewed by Officer Fralick, the complainant was holding a wet cloth to her face and complaining of soreness in her upper body; her hair was in disarray.

The complainant was further questioned later in the morning by Neil Lerner, another Canton policeman. She began to tell him the same story, but when her daughter, aged fifteen, said, "Mommy, daddy knows. Tell the officer the truth," she then outlined the story that formed the basis of the prosecution's case.

As told at trial, the story was that at 8:00 on the evening of May 23, a married girl friend had asked the complainant to go with her to the Sportsman's Club, a local tavern the complainant went to several times a month. The complainant said she was initially reluctant to go, but eventually she agreed. Her husband was not at home at the time. She picked up the friend and arrived at the club about 9 P.M.; she and her friend sat at the bar. During the course of the evening she had four or five drinks. Some time after 11 P.M., four men dressed in golf clothes entered; one was the defendant. He stood behind her, making small talk with her for fifteen or twenty minutes. She danced with the defendant, but stopped when he said "something suggestive." He then asked the complainant if on her way home she could give him a ride to his car which was parked at the Ponkapoag golf course, about a mile away. She agreed to do so after the defendant arranged for a separate ride home for her girl friend.

The complainant, according to her testimony, left the club with the defendant about 12:45 A.M. and drove with him to the golf course parking lot. Reaching there, the defendant said that his friend had not yet returned his car. The complainant and the defendant waited at the lot about an hour; she admitted she stayed voluntarily but denied kissing the defendant. At last she complained of the time and said she should be getting home; he began cursing and wondering where his friend was. She testified that as they drove away, he got angry, grabbed the back of her neck, and slapped her. He forced her to continue driving; she said she was too afraid to tell him to get out of the car.

After some aimless driving around at his direction, he took the wheel and drove to a secluded spot in Canton, where he told her he was going to have intercourse with her. He pulled at her shirt, but she agreed to take her clothes off rather than have them ripped. She said he threatened to kill her, but she saw no weapon. He punched her, bit her breasts, and penetrated her vagina and anus. Acts of cunnilingus and fellatio followed, also said to be coerced. All this took place inside the car. They then dressed, and after some further driving, the defendant got out of the car and the complainant drove home. The daughter, who testified that she was awakened by her mother's return, said that she arrived home hysterical and screaming that she had been raped. She awakened her husband and the police were called. The daughter testified that forty-five minutes elapsed before the police arrived.

An off duty Canton policeman, John Devine, who had been in the Sportsman's Club on the evening in question, corroborated the complainant's testimony that she and the defendant left the club together about 12:45 A.M.; he added that she exchanged greetings with him as they left. There was no direct corroboration of the complainant's testimony about any of the subsequent events. A physician who examined the complainant on the afternoon of

May 24 testified to observing black and blue marks and abrasions on her breasts, face, and lower abdomen, a swelling over her left hip, and what could have been a bite on her left breast. He did not testify as to how serious he considered these to be, and there is no indication that she required any substantial treatment.[4] The defendant did not testify.

On the whole case as described above, we agree with the defendant's contention that the erroneous exclusion of the evidence of the complainant's poor reputation for chastity required reversal of all the convictions, not only that for rape. It is settled that evidence as to sexual conduct or reputation for unchastity is not admissible to impeach a witness by its suggestion of bad character and thus of untrustworthiness as a witness. *Commonwealth v. Vandenhecke*, 248 Mass. 403, 404 (1924). *Commonwealth v. Gettigan*, 252 Mass. 450, 460 (1925). Wigmore, Evidence, § 924 (Chadbourn rev. 1970). McCormick, Evidence, § 44 (2d ed. 1972). But that is not the rationale for admissibility relied on here. Here the only evidence that unnatural acts or sodomy took place was the complainant's testimony. Her credibility was the key issue as to those offenses. But " [i]f the jury were satisfied that . . . [a witness] testified falsely as to a material issue in the case, they had a right to consider it in determining the weight and degree of credibility to be given to all his testimony." *Peck* v. *New England Tel. & Tel. Co.* 225 Mass. 464, 466 (1917). Accord, *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 103-104 (1902); *Ducharme* v. *Holyoke St. Ry.* 203 Mass. 384, 387 (1909); *Boston* v. *Santosuosso*, 307 Mass. 302, 343 (1940); *National Labor Relations Bd.* v. *Pittsburgh S.S. Co.* 337 U. S. 656, 659 (1949) ("the testimony of one who has

---

[4] Because of the number of the complainant's prior pregnancies, the physician could not give an opinion as to whether she had recently had intercourse. No test for semen was made either in her body or on her clothing.

been found unreliable as to one issue may properly be accorded little weight as to the next[4]). In the present case, as the Commonwealth now recognizes, evidence of poor reputation for chastity, had it been admitted, could have persuaded the jury that rape did not take place, and that the complainant had testified falsely as to that. So persuaded, the jury might well have disbelieved the complainant in her further uncorroborated testimony that sodomy and unnatural acts had occurred. They might have believed, instead, that the complainant had intercourse with the defendant voluntarily, then fabricated the story of rape to provide an excuse for her return home at 5 A.M., adding the story of sodomy and unnatural acts to gain additional sympathy.[5] That the police were initially given a false story might in the jurors' minds have lent strength to this theory of the facts.

An analogous situation appeared in *State* v. *Stevens*, 248 Minn. 309 (1956). In that paternity proceeding, evidence that the mother had had intercourse with someone other than the person accused as the father was admissible as proof that that person was not in fact the father; but the jury were also allowed to use their disbelief of the mother's denial of such intercourse as the basis for disbelieving her entire testimony. It may be urged that our case differs in that the reputation evidence would have been inadmissible if the Commonwealth had prosecuted the defendant only for sodomy and unnatural acts, since substantively that evidence went only to contradict her testimony that force was used and force was

---

[5] The bruises provided some corroboration of the complainant's story as to assault and battery, but we conclude that the jury's disbelief could have extended to the testimony as to the defendant's culpability of that alleged offense as well. Thus, for example, the jury could have reasoned that the bruises, if suffered during an episode with the defendant, did not exceed the physical concomitants of rough or inebriated but nevertheless consented-to intercourse within the confines of an automobile.

not a necessary element of those offenses in the view of the law on which this case was tried. But in fact the Commonwealth prosecuted all the charges which together made up a single unified incident, and we therefore see no basis for an artificial separation.

The Commonwealth argues that, not having indicated at the time of the objection at trial the use proposed to be made of the excluded reputation evidence on the charges other than rape, the defendant is foreclosed from urging that use here. But this argument must fail because the basis of the judge's ruling at trial excluding the evidence was that the witness was not properly qualified to testify to the complainant's reputation for chastity at all. It was therefore irrelevant to his ruling which of the charges was thereby affected, and the Commonwealth suffered no prejudice by the defendant's failure to specify. [6]

In reply to the dissenting opinion, we would say that if, as the dissent asserts, the kind of reputation evidence held to have been erroneously excluded here [7] is sometimes incorrectly and unfairly used by juries simply to "punish" complainants thought to be of loose morals, there must be other instances where the evidence is used correctly and with moderation as some proof of consent and with possible impairment of the complainant's whole testimony where the jury disbelieve her in point of fact.

---

[6] The situation before us is thus in sharp contrast to that in *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974), mentioned in text, in which, recognizing the existence of a consent defense to an unnatural acts charge, we nonetheless refused to reverse the conviction before us because the defendant had failed to urge a consent defense at trial. There, unlike the situation in the case before us now, the Commonwealth was prejudiced by the defendant's failure to act at trial, for the trial judge was precluded from making the correct ruling of law. Here, even if the defendant had specified his proposed use, there was no further ruling for the trial judge to make, as he had already totally excluded the evidence at issue.

[7] As already noted, the Commonwealth accepts and has not asked us to reexamine in this case the settled rule which admits this reputation evidence as tending to prove consent.

Judges are bound to instruct according to these precepts, and there is much to be said for assuming regularity in the functioning of the jury under instructions; inadequate instructions are subject to final correction. We may say further that it would be odd and unwise indeed to let the defendant's convictions for sodomy and unnatural acts stand here, while holding that he was illegally convicted of a rape alleged to have occurred during the same incident: the trial needs to be redone entirely.

Disposing of the case as we do, we need not go into any phase of the defendant's second contention, that, since our recent decision in *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974), interpreted the unnatural acts statute to admit adult consent as a defense, reversal of his conviction is now required because the excluded evidence of the complainant's poor reputation for chastity was directly relevant in refuting the charges of sodomy and unnatural acts. While the consent defense will be open to the defendant on a retrial, we do not now undertake to decide whether a poor reputation for chastity, as distinguished from a reputation for engaging in the particular acts charged, is admissible to show consent as a defense to a charge of sodomy or unnatural acts.

*Exceptions sustained.*

BRAUCHER, J. (dissenting). I think the exceptions should be overruled on the indictments for sodomy, unnatural and lascivious acts, and assault and battery, for the reasons given by the Appeals Court: "The excluded testimony . . . bore only on the issue of consent, not on veracity. Wigmore, Evidence, § 924b (B) (Chadbourn rev. 1970). The convictions on the other indictments are therefore not affected by the error."

In view of the extended discussion of the point by the court, some elaboration of these reasons is appropriate. The "established law" on which the court's opinion rests is part of a legal tradition, established by men, that the

complaining woman in a rape case is fair game for character assassination in open court. Its logical underpinnings are shaky in the extreme. See, for example, *People* v. *Abbott*, 19 Wend. 192, 195 (N. Y. 1838): "And will you not more readily infer assent in the practised Messalina, in loose attire, than in the reserved and virtuous Lucretia?" As to the rule that "an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of . . . consent in a case of rape," see Federal Rules of Evidence 404, Advisory Committee's Note (1973): . "While its basis lies more in history and experience than in logic, an underlying justification can fairly be found in terms of the relative presence and absence of prejudice in the various situations. . . . [Citations omitted.] In any event, the criminal rule is so deeply imbedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence."

Dean Wigmore, who was as enthusiastic as anyone about the rule, recommended radical changes in related rules. See Wigmore, Evidence, § 924a (Chadbourn rev. 1970). Others have been still more critical: "Character evidence, while purporting to protect an accused, is actually a ruse whereby a jury's attention is diverted from the particulars of a defendant's actions at the time of an alleged sexual assault to the complainant's past life and conduct." Comment, 64 J. Crim. L. & Criminology 67, 75 (1973). Cf. Comment, 62 Yale L. J. 55, 79, 82 (1952); Note 81 Yale L. J. 1365, 1390-1391 (1972). There is some authority for rejecting entirely evidence of general reputation for chastity. *State* v. *Allen*, 66 Wash. 2d 641, 643 (1965).

So far as I can discover, we have not set aside a conviction because of the exclusion of evidence of a victim's reputation for unchastity since *Commonwealth* v. *Kendall*, 113 Mass. 210 (1873). Our opinions, like those in most States, have paid lip service to the rule, but our decisions have carefully limited it. See Wigmore, *supra,*

§ 924b (B): "The following rules do permit" data on disposition to chastity "to come in, but *not as affecting veracity* of the witness; they come in for other issues, though no doubt they have received in argument, by evasion, some use as affecting veracity: 1. On a charge of *rape*, the woman's consent being in issue, her *character* for unchastity may be received (§ 62 *supra*); but not on a charge of rape under age, assault with intent, etc." (emphasis in original). Though specific acts of unchastity have more direct relevance to consent than mere reputation, we have held evidence of such acts inadmissible. *Commonwealth* v. *Regan*, 105 Mass. 593 (1870). See *Commonwealth* v. *McKay*, 363 Mass. 220, 226-227 (1973). Where consent was not in issue, as in bastardy cases, we have excluded the evidence of reputation for unchastity. *Parker* v. *Dudley*, 118 Mass. 602, 604 (1875).

More important for the present purpose is whether reputation for unchastity can be used to affect veracity. In an early case we held that a witness for a defendant in a rape case could be shown to be "notoriously a common prostitute," since she "must necessarily have greatly corrupted, if not totally lost, the moral principle." *Commonwealth* v. *Murphy*, 14 Mass. 387, 388 (1817). Cf. *State* v. *Sibley*, 131 Mo. 519, 531 (1895): "It is a matter of common knowledge that the bad character of a man for chastity does not even in the remotest degree affect his character for truth, when based upon that alone, while it does that of a woman." But Chief Justice Shaw long ago wrote for this court an opinion overruling the *Murphy* case and repudiating its doctrine. *Commonwealth* v. *Churchill*, 11 Met. 538, 539 (1846). Unfortunately, however, the court's opinion in the present case, by subtle indirection, breathes new life into the doctrine long ago abandoned.

The trouble is that the court reasons logically, using an illogical rule as its major premise. The result, not surprisingly, is an illogical conclusion. If the jury had

heard testimony, as to the victim's "reputation in the community for being chaste or unchaste," that "the reputation isn't that great," and that she "had a bad reputation," they might legitimately have drawn the inference that she had consented to sexual intercourse. From this inference, says the court, they might further have inferred that her testimony that she did not consent was false, and therefore that everything she said was false. From this conclusion, the jury might have reasoned that she had consented to a romp in the back seat of an automobile and that her visible bite and bruises had been acceptable incidents of that romp. Reliance is placed on a dictum in a Minnesota case where the holding was that a jury could properly reject a similarly attenuated chain of inference. *State* v. *Stevens*, 248 Minn. 309, 313 (1956).

Defense counsel doubtless took a less fanciful view. Confronted by evidence of visible bite and bruises, unable to put his defendant on the witness stand,[1] he could have had little hope of convincing a rational juror that there was a reasonable doubt whether there had been a forcible rape. But the jury "closely, and often harshly, scrutinizes the female complainant and is moved to be lenient with the defendant whenever there are suggestions of contributory behavior on her part. . . . If given the option of finding a lesser offense, the jury will avail itself of it. However, if this option is not available, the jury appears to prefer to acquit the defendant rather than to find him guilty of rape. . . . There are cases in which the situation is clearly aggravated by extrinsic

---

[1] It is not clear from the bill of exceptions whether the probable reason was suggested to the jury. At a voir dire on identification, a police officer testified that the defendant's picture was in a "mug shot book of people who had been incarcerated," and that he "had been in trouble once before in a similar incident." Thereafter the jury was reconvened and the police officer resumed his testimony, "describing the events related on voir dire." No question of error in this respect is argued to us.

violence, but the jury is still lenient to the defendant." Kalven & Zeisel, The American Jury, 249-251 (1966). For an illustration of conviction of a lesser offense in such a case, see *Commonwealth* v. *LaBella,* 364 Mass. 550, 551, n. 1 (1974). Cf. Amir, Victim Precipitated Forcible Rape, 58 J. Crim. L., Criminology & Police Science 493, 502 (1967).

The court suggests that, if the rape charge had been tried separately from the other charges, the present result might have been avoided, and that the Commonwealth may have invited the result by prosecuting all the charges together. Thus to encourage separate trials serves no legitimate interest of the prosecutor, the defendant, the judicial system, or the public. The suggestion serves to emphasize the artificial character of the reasoning and the new anomaly it introduces into what is already an unsatisfactory body of law. See A. B. A. Summary of Action of the House of Delegates, February 24-25, 1975, p. 22, and (March 4, 1975) 43 U. S. L. Week 2362.