## Commonwealth v. Dickerson

*Robert Keller, assistant district attorney,* for the commonwealth.

*Francis A. Holloran Jr.,* for defendant.

SURRICK, *J.,* February 10, 1989 — On February 11, 1988, a jury found defendant, Eric Dickerson, guilty of the crime of rape[1] under Information no. 8988A-86; involuntary deviate sexual intercourse[2] under Information no. 8988B-86; and possessing instrument of crime[3] under Information no. 8988G-86.[4] These charges arose as a result of an incident which occurred on December 31, 1986, at approximately 9:45 p.m. on Pennell Street in the City of Chester, Delaware County, Pennsylvania.

Post-trial motions were timely filed and after review of the briefs submitted by counsel, and oral argument, these motions were denied by order dated August 16, 1988. On September 13, 1988, defendant was sentenced to an aggregate term of imprisonment of not less than seven and one-half years nor more than 15 years.[5] Defendant has filed

1. 18 Pa.C.S. §3121.
2. 18 Pa.C.S. §3123.
3. 18 Pa.C.S. §907.
4. Defendant was initially charged with the additional crimes of simple assault under Information no. 8988C-86, 18 Pa.C.S. §2701; terroristic threats under Information no. 8988D-86, 18 Pa.C.S. §2706; indecent assault under Information no. 8988E-86, 18 Pa.C.S. §312; unlawful restraint under Information no. 8988F-86, 18 Pa.C.S. §2902. These charges were withdrawn by the commonwealth prior to the commencement of trial.
5. The sentences on each information were as follows:

*Information no. 8988A-86* — Rape — incarceration in the state correctional institution of not less than five years nor more than 10 years.

*Information no. 8988B-86* — Involuntary Deviate Sexual Intercourse, Forcing and Compelling — incarceration in the SCI of not less than two and one-half years nor more than five years — to run consecutively to sentence under Information no. 8988A-86.

*Information no. 8988G-86* — Possession of Instrument of

a notice of appeal to the Superior Court, thus necessitating this opinion. The facts upon which the convictions were based, as established by the testimony and evidence presented at trial, are as follows:

On the evening of December 31, 1986 (New Year's Eve), the victim, Mauriel Smith, age 25, was attending a party at the Dorian Court apartment complex located in the City of Chester, Delaware County, Pa. At approximately 9:30 p.m. she left the party for the purpose of taking a walk. As she proceeded along Third Street, defendant approached her from behind, grabbed her by the shoulders, immediately placed a knife against her throat and cupped his hand across her mouth. Defendant then forced the victim through an alley to an abandoned house located at 22 Pennell Street. Once inside this house, defendant became verbally abusive and violent, forcing the victim to pull her pants down. He then forced the victim to bend over and proceeded to engage in vaginal intercourse with her by entering her from behind. After 10 to 15 minutes of this sexual activity, defendant ordered the victim to commit fellatio upon him. The victim was forced to engage in this involuntary deviate sexual intercourse for several minutes after defendant had wiped off his penis with tissues. At some point during the course of the episode, the victim realized that defendant had put his knife down on a nearby window sill. The victim managed to pick up the knife and waited for an opportunity to escape. When the opportunity arose, the victim turned the knife on defendant and held him at bay while she effected

Crime —incarceration in the SCI of not less than two and one-half years nor more than five years — to run consecutively to sentence under Information no. 8988A-86 and concurrently with the sentence on Information no. 8988B-86.

her escape. After running from the abandoned house, the victim encountered her brother and told him what had happened. Together, the two of them searched for defendant, first at the scene of the crime and then at a bar located in the vicinity. Failing to locate defendant, they returned to the victim's home on Edward Street, arriving at approximately 11:15 p.m. Shortly thereafter, the victim went to her boyfriend's apartment where she spent the night.

The following morning, January 1, 1987, the victim's boyfriend drove her to the Chester Police Station where she turned over the knife and reported the assault. After reporting the incident, the victim proceeded to Crozer-Chester Medical Center where she underwent a medical examination. Thereafter, the victim was interviewed by Chester police officers at which time she took the police to the abandoned house where the assault had occurred. Inside the house the police recovered the tissues used by defendant to wipe himself prior to compelling the victim to perform fellatio upon him. The tissues were sent to the Pennsylvania State Police Laboratory for analysis. Examination of the tissues revealed the presence of seminal fluid and spermizola. The victim positively identified Eric Dickerson as the person who assaulted her on December 31, 1986. She testified that she had purposely looked at defendant's face, and that she was sure that defendant was the assailant. She also identified the knife which she had given to police as the knife that defendant was carrying at the time of the rape, and the tissues.[6]

6. Defendant testified at trial. His explanation of how the incident took place was that he was sitting on steps at Third and Pennell Streets, having just purchased some cocaine,

Defendant has raised the following issues for review:

(1) Did the court commit error in refusing to allow defendant to question the victim regarding sexual intercourse between her and her boyfriend after the rape but before she made a complaint to the police?

(2) Is the verdict against the weight of the evidence?

Addressing first defendant's argument that the court erred in limiting cross-examination of the victim, after jury selection but before opening statements, counsel requested a ruling from the court on the admissibility of certain evidence which defendant intended to elicit from the victim on cross-examination. An in-camera hearing was held, during which defense counsel advised the court that he intended to establish on cross-examination of the victim that she had had sexual relations with her boyfriend after she had allegedly been raped by defendant, but before reporting the incident to the police. Specifically, counsel indicated that the victim had told the Chester police that after the subject incident she had spent the night with her boyfriend at her boyfriend's apartment and that in the morn-

when the victim walked up to him and asked him to share the cocaine. The victim voluntarily offered to have oral sex with defendant in exchange for the cocaine. The victim then took defendant to an abandoned house and while performing fellatio upon defendant in the abandoned house, the victim learned that defendant had no more cocaine. The victim became enraged, grabbed the bag that defendant had in his possession which contained a knife and two candy bars, and ran from the building. Shortly thereafter, the victim returned and informed defendant that she was going to charge him with rape. Defendant claims that he never removed the knife from the bag, never forced the victim to commit fellatio upon him, and never had sexual intercourse with her.

ing, before going to the Chester police station to report the rape, she had had sexual intercourse with her boyfriend. While conceding that the victim would testify, if asked, the commonwealth objected to such testimony, citing the Rape Shield Law, 18 Pa.C.S. §3104. Defendant argued that the Rape Shield Law did not apply because the Rape Shield Law precluded only evidence of *past* sexual conduct and did not speak to the question of the admissibility of *subsequent* sexual conduct. Defendant argued that evidence that the victim had had sexual intercourse with her boyfriend only a few hours after she was allegedly attacked and raped by defendant was relevant, and was admissible for the purpose of attacking the credibility of the victim. The court sustained the commonwealth's objection and precluded defendant from eliciting this testimony. Defendant now contends that this court's ruling was error requiring the granting of a new trial. We disagree.

The Pennsylvania Rape Shield Law provides as follows:

"(a) *General Rule* — Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

"(b) *Evidentiary proceedings* — A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that

the motion and offer of proof are sufficient on their faces, the court shall order an in-camera hearing and shall make finding on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a)."

In enacting this legislation, our legislature was not only attempting to protect the victims of sexual assault from character assassination at the hands of defense counsel, it was also attempting to ensure that the decisions of juries in such cases were based upon the facts of the case rather than upon passion or prejudice or a moral assessment of the victim. The necessity for such legislation was discussed by our Superior Court in the case of *Commonwealth v. Strube,* 274 Pa. Super. 199, 418 A.2d 365 (1979), as follows:

"The raison d'etre of 18 Pa.C.S. §3104 and similar rape shield laws in other jurisdictions, is to partially correct the manner in which our criminal justice system has approached the victim of a sexual assault. That system, and society in general, has been severely criticized as being overly solicitous in protecting the interests of the alleged male perpetrator, to the virtual exclusion of the female's sensibilities and legal rights. In apparent response to the condemnation, several jurisdictions have enacted legislation designed to alleviate the physical trauma and emotional disorientation suffered by the sexually abused female . . . The most prevalent type of reform, however, deals with statutes altering the traditional rules of evidence in rape cases so as to limit in some degree the defendant's inquiring into the previous sex life of the alleged victim . . .

"What is certain is that the introduction of such evidence at trial has a highly traumatic and embarrassing effect on the complaining witnesses. In-

deed, in our present adversarial system, the art of cross-examination in rape cases is often employed, not as a rapier to reveal the nuances of a witness's testimony, but as a bludgeon to underscore the complainant's possibly checkered past . . .

"The Rape Shield Laws are legislative recognitions of the minimal probative value of sexual history and are designed to prohibit, to varying degrees, the travesty of presenting a noisome stream of defense witnesses testifying to the sexual propensities, often sordid and sometimes fanciful, of the complaining witness."

As to defendant's contention that the Rape Shield Law cannot be used as a vehicle for limiting defendant's cross-examination of the victim because the language of section 3104 makes it inapplicable to the instant situation, defendant has misinterpreted the language of section 3104. Defendant would have us read this section so that the word "past" relates only to the date of the alleged sexual assault. Defendant suggests that under such a reading, the Rape Shield Law would preclude only evidence of the victim's sexual conduct before the alleged rape and the evidence of sexual conduct after the alleged rape should be fair game for defense counsel.[7] This is an inappropriate and unnecessarily restrictive reading of the language of section 3104.

The Statutory Construction Act, 46 P.S. §501 et. seq., provides in pertinent part as follows, with regard to interpretation of statutory language:

"§553. *Words and Phrases* —

---

7. In light of our finding that the Rape Shield Law applies to this situation, we need not address defendant's assertion that evidence of sexual conduct after the alleged rape is fair game for defense counsel in the absence of the Rape Shield Law. However, we would note that we do not agree with this assertion.

"Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; . . . "

"§551. *Construction of Laws; The Legislative Intent Controls* —

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters — (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; . . . (6) the consequences of a particular interpretation; . . . "

"§552. *Presumption in Ascertaining Legislative Intent* —

"(1)that the legislature does not intend a result that is absurd . . . or unreasonable."

The Random House Dictionary of the English Language, the unabridged edition, provides, in pertinent part, the following definition for the word "past":

"*past* — (1)gone by or elapsed in time; . . . (2) of, having existed in, or having occurred in a time previous to the present; . . . (3)gone by just before the present time."

We can see no logical reason to restrict the meaning of the word "past" as used in section 3140 to a particular or specific time before the present. Certainly, if the legislature had intended to restrict the application of section 3104 to only those instances of sexual conduct occurring prior to the subject attack, it could have easily done so. We are satisfied that to do so now would be to defeat the obvious intent of the legislature and to create an absurd and unreasonable result. Defendant's proffered interpretation of section 3104 disregards completely the occasion and necessity for the law, the

circumstances under which it was enacted, the mischief to be remedied and the object to be attained. Evidence of the victim's sexual conduct between the date of the attack and the trial is just as embarrassing, just as traumatic and just as abusive as evidence of sexual conduct prior to the attack. And its probative value is just as minimal. Defendant's argument is without merit.

Defendant contends that even assuming the application of the Rape Shield Law to sexual conduct of the victim subsequent to the alleged attack, the court erred in its application of the Rape Shield Law to the facts of this case. Defendant contends that the court should not have excluded the evidence which was relevant for the purpose of attacking the credibility of the victim. Defendant argues that because the victim and defendant provided the only direct evidence of what actually happened on the night of December 31, the issue of credibility was a critical factor in the outcome of this trial. Defendant argues that his right to confrontation guaranteed by both the state and federal constitutions was violated because the court precluded cross-examination of the victim on a subject bearing directly on her credibility. Defendant cites the case of *Commonwealth v. Black,* 337 Pa. Super. 548, 487 A.2d 396 (1985) in support of his position.

In *Black* the Superior Court discussed the relationship between the Rape Shield Law and defendant's constitutional right of confrontation, making the following observations:

"While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility, we do not hold that all material evidence is necessarily admissible. *Although logically relevant, evidence tending to show the victim's prejudice or lack of*

*credibility may be excluded if it would so influence the minds of the jurors that its probative value is outweighed by unfair prejudice.* This balancing determination between probative value and unfair prejudice should be made by the trial court at an in-camera hearing similar to that outlined in 18 Pa.C.S. §3104. At the hearing the trial court should determine the following as a matter of record to be preserved for appellate review: (1) *whether the proposed evidence is relevant to show bias or motive or to attack credibility;* (2) *whether the probative value of the evidence outweighs the prejudicial effect;* and (3) whether there are alternative means of proving bias or motive or to challenge credibility.

"We emphasize that our holding today is not meant to limit the importance of the general principles embodied in the Rape Shield Law, particularly, that evidence of sexual conduct with third persons is irrelevant to prove either general moral defect or consent of the victim. We also reaffirm the trial court's responsibility to limit repetitive and unnecessarily harassing cross-examination in all cases, but especially these most sensitive situations. But, in spite of the trial court's appropriately broad discretion in controlling the examination of witnesses, we cannot approve the complete elimination of a relevant and crucial line of cross-examination. We, therefore, hold that insofar as the Rape Shield Law purports to prohibit the admission of evidence which may logically demonstrate a witness' bias, interest or prejudice or *which properly attacks the witness' credibility,* it unconstitutionally infringes upon an accused's right of confrontation under the Sixth Amendment to the United States Constitution." *Black* at 557-8, 487 A.2d at 401-2. (citations and footnotes omitted) (emphasis supplied)

In the instant case, defendant does not suggest

that the proffered testimony is logically relevant to show the victim's bias or motive. Defendant suggests that the fact that the victim made love to her boyfriend on the morning following the attack is inconsistent with her testimony that she was raped. In essence, defendant is asserting that anyone who has suffered the trauma of rape in the evening would be incapable of engaging in voluntary consensual sexual intercourse the following morning. Although at first blush this assertion might appear to have some validity, upon closer scrutiny, it must be rejected.

Our legislature has determined that in two specific areas, evidence of a victim's immediate reaction to the trauma of rape may be sufficiently predictable so as to make it admissible. The Crimes Code, in section 3106,[8] provides that although a victim is not required to make a prompt complaint, defendant may introduce evidence of failure to make a prompt complaint under appropriate circumstances. The code also provides, in section 3107,[9] that although the victim of rape need not resist her attacker, defendant may introduce evidence of failure to resist on the issue of consent. These provisions are a legislative recognition of the fact that failure to make a prompt complaint and failure to resist may be inconsistent with the accusation of sexual assault and may, therefore, be logically relevant evidence for impeachment purposes. We are satisfied, however, that beyond these areas, one's continuing reaction to the trauma of sexual assault is not readily capable of prediction. Such reaction is a very personal thing which will vary from victim to victim. It is dependent upon the

8. 18 Pa.C.S. §3106.
9. 18 Pa.C.S. §3107.

sensibilities and sensitivities of the individual involved, her lifestyle, how she views matters of morals, sex and sexual intercourse, and a multitude of other factors not easily capable of identification or evaluation. We could reasonably expect the reaction of a prostitute or one who regularly engages in a smorgasbord of sexual activity on a recreational basis to be quite different from one who would find such activity morally offensive and shocking. In order to attempt to ascribe evidentiary value to a victim's reaction, you should know the victim. Obviously, such an inquiry at trial is inappropriate and is exactly what the Rape Shield Law was designed to prevent.

We are satisfied that the fact that the victim of this sexual assault reacted to her ordeal by seeking physical companionship and love is, at best, only marginally relevant to the issue of credibility. In fact, we do not believe that it is relevant at all. However, to the extent that one may think it relevant, its minimal probative value is far outweighed by its prejudicial effect.[10]

Finally, defendant contends that the jury's verdict was against the weight of the evidence. It should be noted that defendant has confused or meshed the concept of the weight of the evidence and the concept of the sufficiency of the evidence.[11] It should also be noted that defendant's boilerplate

10. We also note that both the victim and defendant testified at trial. Thus, the jury had ample opportunity to assess the credibility of both individuals and to determine which version of this incident was true.

11. Defendant's post-trial motions allege only that the verdict is against the weight of the evidence. Defendant's brief entitles his argument as one involving the weight of the evidence. However, the argument itself in defendant's brief addresses the sufficiency of the evidence.

310

allegation does not preserve the issue for appellate review whatever was intended. *Commonwealth v. Trudell,* 371 Pa. Super. 353, 538 A.2d 53 (1988); *Commonwealth v. Gravely,* 486 Pa. Super. 194, 404 A.2d 1246 (1979). In any event, out of an abundance of caution, we will address the issues of both the weight and the sufficiency of the evidence.

In the case of *Commonwealth v. Taylor,* 324 Pa. Super. 420, 471 A.2d 1228 (1984), the Superior Court made the following observation concerning review of the sufficiency of the evidence as opposed to review of the weight of the evidence:

"Sufficiency of the evidence and weight of the evidence are discrete inquiries . . . In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt . . .

"A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge and his decision will not be reversed on appeal unless there has been an abuse of discretion . . . The test is not whether the court would have decided the case in the same way, but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail." *Taylor* at 424-5, 571 A.2d at 1229-30.

Addressing first the assertion that the evidence

was insufficient, we have reviewed the evidence and are satisfied that there was more than sufficient evidence to support this verdict. As the above-recited facts indicate, the victim testified that she was taken off the street at knife point by defendant, forced into an abandoned house and forced to engage in oral and vaginal sex with defendant. Each of the elements of the crimes charged were established by the victim's testimony and confirmed by certain physical evidence which was presented at trial. If believed, the victim's testimony was more than sufficient to support the jury's findings. Our courts have repeatedly recognized that the testimony of a rape victim in and of itself is sufficient to support a conviction. See *Commonwealth v. Gabrielson,* 370 Pa. Super. 271, 536 A.2d 401 (1988); *Commonwealth v. Westcott,* 362 Pa. Super. 176, 523 A.2d 1140 (1987); *Commonwealth v. Flynn,* 314 Pa. Super. 162, 460 A.2d 816 (1983).

Defendant points to certain inconsistencies in the testimony of the victim and argues that those inconsistencies mandate that defendant be granted a new trial. What defendant fails to realize is that it is the jury's function to weigh all of the evidence, including any inconsistencies in the testimony of the witnesses, in assessing the credibility of those witnesses. *Commonwealth v. Miller,* 375 Pa. Super. 437, 544 A.2d 1000 (1988); *Commonwealth v. Pearsall,* 368 Pa. Super. 327, 534 A.2d 106 (1987); *Commonwealth v. Levenson,* 282 Pa. Super. 406, 422 A.2d 1355 (1980). In the instant case the jury did that and concluded beyond a reasonable doubt that defendant was guilty. The fact that there may have been inconsistencies or minor variations in the testimony of the victim does not render the evidence

insufficient to support the verdict. *Commonwealth v. Flaherty,* 273 Pa. Super. 167, 417 A.2d 221 (1980).

Turning now to the question of the weight of the evidence, suffice it to say that we do not believe that the verdict in this case was "so contrary to the evidence as to make the award of a new trial imperative." On the contrary, the verdict was completely consistent with the evidence and was entirely appropriate. In fact, we would have been surprised had the verdict been otherwise.

For these reasons, we denied defendant's post-trial motions.