COMMONWEALTH vs. WAYNE WILLIAM SHAW.

No. 89-P-914.

Norfolk. February 15, 1990. - July 23, 1990.

Present: ARMSTRONG, KASS, & JACOBS, JJ.

Rape. Evidence, Sexual conduct, Relevancy and materiality. Rape-Shield
   Statute.

At the trial of indictments charging sexual offenses, the judge did not, in
   the circumstances, abuse his discretion in refusing to allow the defend-
   ant to introduce evidence that the victim, who was about seventeen
   years old at the time of the perpetration of the crimes, sometimes lived
   with her boyfriend. [42-44]

INDICTMENTS found and returned in the Superior Court
Department on May 13, 1987.

The cases were tried before *Andrew Gill Meyer*, J.

*Richard Zorza*, Committee for Public Counsel Services,
for the defendant.

*James F. Lang*, Assistant District Attorney, for the
Commonwealth.

ARMSTRONG, J. The defendant appeals from convictions of
kidnapping, aggravated rape, simple rape, and assault with a
dangerous weapon.[1] The only issue on appeal is whether the
judge abused his discretion in refusing to allow the defendant
to introduce evidence that the victim, who was about seven-
teen at the time of the perpetration of the crimes, sometimes
lived with her boyfriend.

The victim's testimony on direct examination was to the
effect that she was abducted at knifepoint by the defendant,
who forced her to get into his automobile, a faded maroon

---

[1]A conviction of simple assault and battery was placed on file with the
defendant's consent and hence is not before us. See *Commonwealth* v.
*Frey*, 390 Mass. 245, 246 (1983).

Cadillac, and drove her to a secluded area where he raped her. He then offered to drive her home, and she had him drop her off in the vicinity of the house of a family named Clark. Her mother was living there at the time, and she sometimes stayed there. As the defendant's car left, the victim noted the registration number and wrote it down on entering the house. She made prompt complaint, was taken to a hospital where the usual tests (the "rape kit") were performed, and gave the police the registration plate number and a detailed description of the car and the defendant.

At the start of the trial, defense counsel indicated that the defendant was not conceding identification. As the strength of the identification evidence became apparent, the defendant "conceded identification," which in context we take to mean that he admitted through counsel at least that his car was the one used in the commission of the crimes, if not that he was the person who had engaged in intercourse with the victim.[2] (There was no question that intercourse had taken place. The vaginal smears disclosed the presence of live sperm, and the blood and enzyme tests showed results consistent with the defendant's having been the source.[3])

Cross-examining the victim, defense counsel asked whether she was living at the Clark house. The victim's answer was: "Well, at the time, I was staying there for a while, and then later on, I decided that I would move back in there for a while." Counsel asked, "Back into . . . ?", and the victim said, "Marge Clark's." No further questions were asked of the victim concerning her residence, and no mention was made of a boyfriend. (The gist of the cross-examination appears to have been to highlight several inconsistencies be-

---

[2]Later in the trial, the judge stated that he understood the defense to be consent, and defense counsel responded, "The defense is consent, but they still have the burden of proving that sexual intercourse took place."

[3]The tests were not conclusive. The smears revealed blood type A and PGM subtype one minus, one plus. The victim was blood type A, and the defendant, although blood type B, was a non-secretor. Both were of PGM subtype one minus, one plus. These data, as we understand the testimony of the expert witnesses, excluded only two-thirds, roughly, of the white male population.

tween the victim's pretrial statements and her trial testimony. The inconsistencies were not so consequential as to warrant recounting here.)

The defendant did not himself testify. Defense counsel called as his first witness Amanda Clark, who was a contemporary and a close friend of the victim. Defense counsel established through Amanda Clark that the victim's mother had been staying at the Clark house for six weeks but that the victim stayed there only two nights a week or so. At this point defense counsel asked Amanda Clark where the victim stayed other nights, and there was an objection. The offer of proof was that the victim stayed the other nights with her boyfriend or with her stepfather. This evidence was excluded on two grounds: first, that its admission would violate the rape-shield law, G. L. c. 233, § 21B; second, that it was presumptively hearsay. Defense counsel attempted unsuccessfully to overcome the latter point:

> "Q: On nights when [the victim] wasn't staying at your home, were you ever with her?
> "A: No.
> "Q: So you don't know where she was staying on those nights?
> "A: No. I only know what she told me."

The subject was dropped until Mrs. Clark testified. It was apparent that Mrs. Clark was very hostile towards the victim and did not want her staying at the house. She acknowledged that the victim had slept over at her house on occasion in the past, but she denied that the victim was living at her house at the time of the alleged kidnapping and rape. Now defense counsel asked Mrs. Clark where the victim *was* living. The prosecutor objected. The judge observed that they had been through this before and that he would rule the same way again. Defense counsel protested that the only defense he had was to attack the victim's credibility, that Mrs. Clark would testify that the victim had told her that she was living with her boyfriend and with her stepfather, and that this would show that the victim was not telling the truth when

she testified that she was living at the Clark house at the time. The judge observed that the attack on credibility had already been accomplished through Mrs. Clark's denial that the victim was living at her house, and he excluded the testimony.

A third attempt was made. Defense counsel asked to have Amanda Clark resume the stand to testify "based on her personal knowledge" that the victim was living with her boyfriend, thus indicating "that she [the victim] was lying on the stand. In other words, what she would be offering is that [the victim] had a relationship with a male, and that she's fabricating this story about being raped because she was dropped off at [the Clark] home as a way of covering herself for that. I'd be offering it not as impeachment, but as evidence of fabrication." Asked to restate the offer of proof, defense counsel said that Amanda Clark would testify "that [the victim] did have a relationship with another man at the time this happened. The inference I would be drawing from that would be that she was telling the story because she wanted to cover herself in front of her boyfriend, didn't want her boyfriend to find out." The judge denied the request.

No abuse of discretion is shown on this record. It is probably enough to observe that the first offer (through Amanda Clark) was properly excluded on the hearsay ground; the second (through Mrs. Clark) on the ground that the statements the victim had made to Mrs. Clark had no material tendency to contradict her testimony, which implied that she often stayed elsewhere; and the third, on the ground that it would have involved recall of a witness, which a judge is rarely *required* to allow (see *Cushing* v. *Billings*, 2 Cush. 158, 160 [1848]).

The rulings are also sustainable on the ground emphasized by the judge, that of the rape-shield law. The attempt to put before the jury the fact of the victim's live-in arrangement with a boyfriend invited inferences as to the victim's sexual activity that it is the purpose of the rape-shield law to exclude if not sufficiently relevant. In his third offer of proof, defense counsel attempted to tie the offer to the line of cases

that sanction the admission of such evidence where it is the only way of showing that the victim had a motive to fabricate a rape accusation—usually to explain the fact of sexual activity to a lover or authority figure. See, e.g., *Commonwealth v. Joyce*, 382 Mass. 222, 228-230 (1981) (fabrication to avoid arrest for prostitution, of which complainant had twice earlier been convicted); *Commonwealth v. Fetzer*, 19 Mass. App. Ct. 1024, 1025 (1985) (explanation to boyfriend of reason for being found partially clad by roadside in secluded area); *Commonwealth v. Heath*, 24 Mass. App. Ct. 437, 441-445 (1987) (fear of reactions of mother and boyfriend to complainant's return at 4:00 A.M.). See also *Commonwealth v. Elder*, 389 Mass. 743, 749-751 (1983) (accusing mother's boyfriend of rape to stop him from interfering with her affair with boyfriend).

The offer here did not fit well with that line of cases. A motive to conceal a sexual encounter from the boyfriend might have had some tendency to explain the victim's decision to be dropped off at the Clark house rather than at the boyfriend's, but it had little or no tendency, by itself, to explain why the victim would advertise the fact of a sexual encounter by charging rape. The victim was not shown to have been in a position where she had to justify a sexual episode to a third person. Thus, the judge could properly conclude, as he did, that the belatedly asserted defense theory was sufficiently "conjectural" and "far-fetched" as not to justify impinging on "the important policies underlying the rape-shield statute." *Commonwealth v. Joyce*, 382 Mass. at 231.

We recognize that the defendant sought to introduce neither evidence of the victim's reputation for unchastity nor specific instances of prior sexual conduct, these being the two types of evidence directly restricted by the rape-shield law. See *Commonwealth v. Bohannon*, 376 Mass. 90, 95 (1978); *Commonwealth v. Fetzer*, 19 Mass. App. Ct. at 1025. Nevertheless, the law's policy is to scrutinize "a proposed question even remotely connected with [the complainant's] sexual conduct," *Commonwealth v. Bohannon*, *supra* at 95, to ensure that the answer will bear sufficiently on a material issue

to justify its being put in evidence. See discussion in *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 13-16 (1980) (concerning evidence of relationships as opposed to specific instances of sexual conduct). See also *Commonwealth* v. *Chretien*, 383 Mass. 123, 136-138 (1981) (as to relevance of prior sexual activity to issues in case). "The defendant must show at least that the theory under which he proceeds is based on more than vague hope or mere speculation." *Id.* at 138. Here, the judge was justified in concluding that the proffered evidence concerning the victim's sometimes residence with a boyfriend bore no sufficient relevance to the issues properly before the jury to warrant its admission.

*Judgments affirmed.*