## Commonwealth *vs.* Seap Sa.

No. 01-P-575.

Essex. October 3, 2002. - June 30, 2003.

Present: Armstrong, C.J., Kaplan, & Duffly, JJ.

*Rape. Rape-Shield Statute. Statute,* Construction.

At the trial of an indictment charging aggravated rape, the judge properly invoked the rape-shield statute, G. L. c. 233, § 21B, to preclude evidence that the victim had sex with her boyfriend soon after the rape, where the defendant failed to demonstrate that his theory of the evidence's relevance (i.e., that a woman traumatized by rape would necessarily avoid sexual intercourse after the crime) was based on more than mere speculation. [422-427]

Indictments found and returned in the Superior Court Department on October 28, 1998.

The case was tried before *Regina L. Quinlan,* J.

*Brian J. Kelly* for the defendant.

*Catherine Langevin Semel,* Assistant District Attorney, for the Commonwealth.

Duffly, J. The defendant was convicted by a jury of one count of aggravated rape, G. L. c. 265, § 22(*a*), and one count of kidnapping, G. L. c. 265, § 26. The Commonwealth concedes on appeal that on the facts of this case, the kidnapping charge was a lesser included offense of aggravated rape and that the conviction of the defendant on both charges was duplicative. See *Commonwealth* v. *Petrillo,* 50 Mass. App. Ct. 104, 110-111 (2000), cert. denied, 532 U.S. 1030 (2001). The only issue on appeal is whether the trial judge properly invoked the rape-shield statute, G. L. c. 233, § 21B, to preclude evidence that the victim had sex with her boyfriend soon after the rape. We affirm the conviction of aggravated rape.

1. *Facts.* The jury could have found that on a Friday night in

October, the seventeen year old victim from Lynn went out with friends to look for a party, ending up in Malden at a bowling alley/pool hall at about 11:00 P.M. After about an hour, the victim and two girl friends, Lonnie and Jennie, decided to leave with Jennie's boyfriend and his cousin, the defendant. The defendant offered to drive the group back to Lynn, a short ten to fifteen minutes away. The victim was the last passenger to be dropped off. She gave directions to her home, which was nearby, but the defendant passed the street to which she had directed him; he then turned left when she instructed him to turn right. The defendant continued to take wrong turns and began driving faster. During the drive, the victim became increasingly agitated and began screaming at the defendant for not following directions. Eventually, she saw that they had passed signs for Reading and Burlington. By this time, both were yelling. The defendant told the victim that because of her yelling and being mad at him, he was going to rape her.[1] The victim said she was just upset because he would not bring her home, but the defendant told her that he "just didn't care," that he was going to rape her, and that she might never see her parents or family again.

Not far past Burlington, the defendant stopped the car, got out, and came around to the passenger side where he attempted to pull the victim from the car, saying she should get out so they could "fuck for a minute." She began crying, apologized for yelling, and asked him not do anything to her. The defendant agreed to take her home, saying, "If you don't trust me, here, I will give you my wallet so you can trust me." The victim took the wallet. After driving for about an hour, the victim saw signs for Concord and Boston. At this point the defendant said, "I could really kill you if I wanted to and nobody would know." He then pulled the car to the side of the road in a wooded area, got out, put a dark plastic bag on the back windows,[2] and said, "All right. Let's go. Let's go." The victim began to cry and again begged to be brought home. The defendant demanded to

---

[1] The victim, testifying about these events, stated that the defendant spoke to her in Cambodian some of the time, and at times in English; she could speak both and during her testimony translated his statements into English.

[2] He had also done this the first time he pulled the car off the road.

know if she was ready, and said that he could kill her, that she would never see her family again, and that he could put her in a bag and throw her in the woods and nobody would know. Still crying, the victim eventually got into the back seat of the defendant's car, saying: "You can do whatever you want, but you know for sure, we both know that you are really raping me." The defendant removed the victim's pants and underwear, then penetrated her vaginally from behind with his penis, turned her over, climbed on top of her and twice inserted his penis into her vagina, and once entered her vagina with his fingers. The victim testified that "finally, it just came to a point where I didn't care if he was going to kill me. I didn't care what he was going to do to me." She screamed and struggled, until he stopped. As she put on her clothes he said he was "sorry" and that "he really [did]n't want to do this." She asked to go home and, following her directions, the defendant drove the victim to Lynn without incident, stopping once on the way to permit her to use a bathroom.[3] Not wanting the defendant to know where she lived, the victim directed the defendant to her boyfriend's house, where he dropped her off at about 5:30 A.M. The victim told her boyfriend what had happened to her and asked him not to tell anyone. It was not until later that day, when a friend convinced her to report the incident to police and drove her to the Lynn police station, that she reported the crimes. She was taken to a hospital, where tests using a rape kit were performed.

2. *Discussion.* The defense was consent. The defendant filed a written motion in limine before trial, pursuant to G. L. c. 233, § 21B, the rape-shield statute, seeking to introduce evidence that the victim had engaged in sexual intercourse with her boyfriend a few hours after arriving at his home.[4] The judge deferred ruling on the motion; during the trial she sustained the

---

[3]During this stop, the victim removed the defendant's social security card from his wallet and took down the registration number of his car.

[4]In argument to the trial judge, the defendant's attorney stated that it was undisputed that the victim and her boyfriend had made statements about having had sexual relations the morning after the event. Defense counsel first claimed that the fact of the victim's having had sex with her boyfriend was relevant to the issue of the victim's "condition" when she was subsequently examined at the hospital. The prosecutor informed the judge that the Commonwealth would not seek to introduce evidence of the hospital rape kit

Commonwealth's objection to defense counsel's renewed request, made during questioning of the victim. Because the defendant objected at trial, we review to determine whether the judge abused her discretion and, if so, whether this resulted in prejudice to the defendant. See *Commonwealth* v. *DeJesus*, 44 Mass. App. Ct. 349, 352 (1998); *Commonwealth* v. *Best*, 50 Mass. App. Ct. 722, 726 (2001).

The evidence the defendant sought to elicit during questioning of the victim was that, after being dropped off at her boyfriend's house, the victim went to bed and fell asleep; upon awakening at 11:00 A.M., she and her boyfriend engaged in sexual intercourse. The defendant argued to the trial judge that the evidence was relevant because "[i]t calls into question the credibility of the complainant, not because she happened to have sex, not because she is promiscuous, but because it would not be expected behavior in that period of time after she was allegedly traumatized, sexually assaulted by my client, to have had that interaction . . . ." The judge ruled that the rape-shield statute precluded inquiry about the post-rape intercourse between the victim and her boyfriend.

A criminal defendant's right to confront a witness is not absolute. See *Commonwealth* v. *Barnes*, 399 Mass. 385, 393 (1987). "[T]he scope of cross-examination rests largely in the sound discretion of the trial judge." *Commonwealth* v. *DeJesus*, *supra*. A trial judge will not be overruled in determining this scope unless the defendant demonstrates an abuse of discretion. *Commonwealth* v. *Miles*, 420 Mass. 67, 72 (1995).

In exercising her broad discretion to control the scope of cross-examination, "a trial judge should consider the important policies underlying the rape-shield statute." *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981). Historically, a defendant was permitted to introduce evidence of a victim's sexual history because it was considered relevant to the issue of consent, on the basis that "a woman of unchaste character, having demonstrated a propensity for sexual intercourse, was more likely to consent than a virtuous woman." Burnim, Massachusetts Rape-Shield Law — An Over-Step in the Right

because the defendant did not ejaculate during his rape of the victim and because the defense was consent.

Direction, 64 Mass. L. Rev. 61, 61 (1979). But "the result of this strategy was harassment and further humiliation of the victim as well as discouraging victims of rape from reporting the crimes to law enforcement authorities." *Commonwealth* v. *Joyce*, 382 Mass. at 228, quoting from *State* v. *Williams*, 224 Kan. 468, 470 (1978). Indeed, the evidentiary rule was extended to permit a defendant to mount a general attack on the victim's credibility through evidence of her reputation for lack of virtue. See, e.g., *Commonwealth* v. *Manning*, 367 Mass. 605, 611 (1975), decided prior to passage of the rape-shield statute.[5] In that case the court held that evidence of the complainant's poor reputation for chastity had been wrongly excluded: "[E]vidence of poor reputation for chastity, had it been admitted, could have persuaded the jury that rape did not take place, and that the complainant had testified falsely as to that. So persuaded, the jury might well have disbelieved the complainant in her further uncorroborated testimony that sodomy and unnatural acts had occurred. They might have believed, instead, that the complainant had intercourse with the defendant voluntarily, then fabricated the story of rape to provide an excuse for her return home at 5 A.M., adding the story of sodomy and unnatural acts to gain additional sympathy." *Id.* at 611. As the dissent in that case observed, "The 'established law' on which the court's opinion rests is part of a legal tradition, established by men, that the complaining woman in a rape case is fair game for character assassination in open court." *Id.* at 613-614 (Braucher, J., dissenting).

The rape-shield law, G. L. c. 233, § 21B, enacted to prevent

---

[5]The complainant in *Commonwealth* v. *Manning*, 367 Mass. at 608-609, testified that she had been beaten and raped by the defendant, who had asked for a ride to his car from the bar where they had met. She said that "[h]e punched her, bit her breasts, and penetrated her vagina and anus. Acts of cunnilingus and fellatio followed, also said to be coerced." *Id.* at 609. Family members and a policeman testified to seeing bruises when she arrived home, and her physician to seeing bruises and bite marks on her body. The defendant sought to introduce the testimony of a witness who had "engaged in fifteen or twenty conversations with people in the community relative to the complainant's reputation for chastity . . . , all of which led her to state that the complainant had a bad reputation." *Commonwealth* v. *Manning*, 2 Mass. App. Ct. 838 (1974).

such harassment and character assassination of a complainant, provides as follows:

> "Evidence of the reputation of a victim's sexual conduct shall not be admissible in any investigation or proceeding before a grand jury or any court of the commonwealth . . . . Evidence of specific instances of a victim's sexual conduct in such an investigation or proceeding shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim . . . ."

G. L. c. 233, § 21B, as amended by St. 1983, c. 367.

The statute does not preclude all evidence of a complainant's sexual conduct. See, e.g. *Commonwealth* v. *Joyce*, 382 Mass. at 228-229 ("evidence of prior acts, statements or circumstances may be relevant to show a complainant's motive to accuse falsely the defendant"). Where such evidence is relevant to show a motive to lie, the trial judge must determine whether the weight and the relevance of the evidence to the defense are sufficient to outweigh its prejudicial effect on the alleged victim. *Commonwealth* v. *Gagnon*, 45 Mass. App. Ct. 584, 589 (1998).

a. *Behavior inconsistent with that of rape victim.* The defendant here contends that the excluded line of questioning was necessary to attack the victim's credibility. The victim testified during trial that she was psychologically injured and traumatized by the rape. Evidence that the victim had sexual intercourse soon after the rape, and that she waited nearly twelve hours to report the rape, would, the defendant argues, tend to show that "she was not truly traumatized and psychologically injured," thus casting doubt as to whether her encounter with the defendant was nonconsensual. The defendant's reliance on *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991), as the primary support for this claim, is misplaced. There, the defendant sought to establish the complainant's motive to lie by showing that her parents disapproved of her being sexually active. *Id.* at 874-880. The court concluded that the excluded testimony could explain why the complainant had waited nine months to report the rape to her parents and then did so only after an anonymous caller spoke to her father. *Id.* at 877.

We think that the defendant's theory that a woman traumatized by rape would not have sex with her boyfriend soon after the event is speculative at best. In weighing the potential prejudice to the victim, the judge also could properly consider the possibility that the evidence would appeal to unfounded and antiquated biases about what a "virtuous" or "chaste" woman would be likely to do in similar circumstances.

The evidence was properly excluded because the defendant failed to show "[t]hat the theory under which he proceeds is based on more than vague hope or mere speculation." *Commonwealth* v. *Shaw*, 29 Mass. App. Ct. 39, 44 (1990), quoting from *Commonwealth* v. *Chretien*, 383 Mass. 123, 138 (1981). The defendant's theory thus runs afoul of the rape-shield statute, which was "principally designed to prevent defense counsel from eliciting evidence of the victim's promiscuity as part of a general credibility attack." *Commonwealth* v. *Fitzgerald*, 412 Mass. 516, 523 (1992). We note that the case before us stands in marked contrast to the circumstances in *Fitzgerald*, which provided a basis for asking the complainant whether she had had intercourse with anyone other than the attacker on the night of the rape. There, stains in the complainant's underwear were found to contain sperm, but the defendant argued that he could not have committed the crime because he had had a vasectomy. *Id.* at 518-519. On appeal, the court concluded that the inquiry whether the complainant had had any other sexual partner fell outside the rape-shield statute; it was not a general attack on credibility based on the complainant's promiscuity, but rather it would have supported the defendant's theory that he was falsely accused and someone else was the perpetrator. *Id.* at 523-524. Here, the defendant had not ejaculated during his rape of the victim and was not claiming that evidence of intercourse with her boyfriend was needed to explain a physical condition such as the presence of sperm on the victim.[6] See note 4, *supra*. The evidence that the victim had sexual intercourse after the rape was not relevant to a defense theory based on consent.

---

[6]Admission of specific acts of sexual conduct by the victim is allowed where the acts are offered to explain the victim's physical condition subsequent to the alleged crime, such as the presence of semen or bruises in the vaginal area. See G. L. c. 233, § 21B.

The defendant's unsupported claim, that a woman traumatized by being raped would necessarily avoid sexual congress with her partner after the crime, amounts to a general attack on the victim's credibility of the sort that the rape-shield statute was intended to prohibit. Even if evidence of sexual conduct were not prohibited by the specific statutory language of G. L. c. 233, § 21B, such evidence was properly excluded in this case because the role that sexuality plays in the lives of two people is so varied that the nexus between sexual activity and traumatic events is necessarily speculative. There was no abuse of discretion.

b. *Motive to lie.* In a footnote, the defendant also claims that the excluded line of questioning was necessary to show the victim's motive to lie about the rape in order to hide from her boyfriend that she and the defendant had engaged in consensual intercourse. "The short answer to this argument is that it was not made to the judge at trial." *Commonwealth* v. *Gagnon,* 45 Mass. App. Ct. at 588. "A defendant 'is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to this court on a different ground.' " *Commonwealth* v. *Tyree,* 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983), quoting from *Commonwealth* v. *Flynn,* 362 Mass. 455, 472 (1972).[7]

3. *Conclusion.* On the indictment for aggravated rape, the judgment is affirmed. On the indictment for kidnapping, the judgment is vacated, the verdict is set aside, and the indictment is dismissed.

*So ordered.*

---

[7]In any event, *Commonwealth* v. *Stockhammer,* 409 Mass. at 875-880, does not, as he claims, support the defendant's argument that the evidence was necessary to show that the victim had a motive to lie in order to protect her relationship with her boyfriend. That there was an ongoing relationship between the victim and her boyfriend was not a contested issue at trial. The victim and her boyfriend both testified about their relationship and that they had spent the night of the rape and the next day together. Where evidence of bias is available through other means, exclusion of evidence of the complainant's prior sexual history is proper and not an abuse of discretion. See *Commonwealth* v. *Gagnon,* 45 Mass. App. Ct. at 589. See also *Commonwealth* v. *Shaw,* 29 Mass. App. Ct. at 43 (defendant's theory was unsupported and conjectural because victim had no need to justify sexual episode to third person, and therefore, evidence did not show motive to fabricate).