# IN THE COURT OF APPEALS OF IOWA

No. 14-1244
Filed August 5, 2015

**STATE OF IOWA,**
      Plaintiff-Appellant,

**vs.**

**THOMAS ANDREW TOVAR,**
      Defendant-Appellee.

_____

Appeal from the Iowa District Court for Muscatine County, Mark R. Lawson, Judge.

In this interlocutory appeal, the State claims the district court abused its discretion by ruling evidence of a S.M.'s consensual sexual conduct was admissible. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Bridget A. Chambers and Denise Timmins, Assistant Attorneys General, for appellant.

Murray W. Bell of Murray W. Bell, P.C., Bettendorf, for appellee.

Considered by Tabor, P.J., McDonald, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MILLER, S.J.**

In a prosecution for third-degree sexual abuse, the defendant filed a motion pursuant to Iowa Rule of Evidence 5.412 seeking to present evidence of the victim's later consensual sexual behavior with another person. The district court ruled the evidence was admissible. In this interlocutory appeal, we conclude the evidence is not admissible. We reverse the district court's evidentiary ruling and remand for further proceedings.

## I. Background Facts & Proceedings

The minutes of evidence indicate that on February 15, 2013, S.M. and her boyfriend, D.F., obtained a motel room in Muscatine, Iowa. They met with some friends and had several alcoholic beverages. On the drive back to the motel their vehicle was stopped by Muscatine police officers. D.F. was charged with operating while intoxicated (OWI) and taken to the police station. Because the officers believed S.M. was too intoxicated to drive the vehicle, one of the officers, Thomas Tovar, drove S.M. to the motel and took her to her room.

D.F. returned to the motel room in the early morning. He found S.M. lying naked in the bed. She told him she remembered an officer had been on top of her while she was on her back. D.F. called 911 to report that he believed S.M. had been sexually abused by an officer. D.F. then comforted S.M., and the two engaged in consensual sexual behavior. Muscatine police officers investigated the report of sexual abuse. DNA matching that of Tovar was found on bedding seized from the motel room and inside of S.M.'s jeans.

Tovar was charged with sexual abuse in the third degree, in violation of Iowa Code section 709.4(1) or (4) (2013). The State alleged Tovar performed a sex act by force or against the will or another, or had performed a sex act while the other person was mentally incapacitated or physically helpless.

Tovar filed a motion pursuant to rule 5.412 seeking to admit evidence "that while waiting for the police to arrive, D.F. comforted complaining witness, S.M., which resulted in them engaging in sex together prior to the police arriving at the scene pursuant to the 911 call."[1] Tovar claimed any sexual contact between himself and S.M. was consensual. He stated her consent to sex with him was because she hoped it would create a favorable situation for D.F., who had just been arrested for OWI. He also claimed her behavior of thereafter engaging in consensual sexual behavior with D.F. was not consistent with her claim she had been sexually assaulted a few hours earlier. The State filed a resistance to Tovar's motion.

The district court ruled from the bench at the hearing on the motion. The court first determined rule 5.412 did not apply because, "We're not talking about past sexual behavior here, we're talking about current behavior, which is part of the res gestae of the case here." The court went on to find that if rule 5.412 did apply, the evidence was relevant, stating S.M.'s "alleged conduct with her boyfriend between the time of the 911 call and the time police arrived could be—may not be, but could be interpreted as inconsistent with a sexual assault and

---

[1] Tovar also sought to present evidence S.M. and D.F. had earlier engaged in consensual sexual activity prior to leaving the motel room to meet with their friends. At the hearing on his motion he indicated he was no longer seeking to present this evidence.

consistent with consensual sex." The court further found the evidence went to S.M.'s state of mind. The court found the probative value of the evidence was not outweighed by its prejudicial effect. Finally, the court determined "this evidence is constitutionally required to be admitted to allow the defendant to present a defense under the Sixth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments." The court specified its ruling was limited to the fact S.M. and D.F. engaged in sexual conduct between the time they made the 911 call and the time the police arrived, and no details of the encounter were admissible.

The State filed an application for interlocutory review of the court's ruling. The Iowa Supreme Court granted the application for interlocutory review and stayed the district court proceedings. The case was subsequently transferred to the Iowa Court of Appeals.

## II. Standard of Review

Our review of a district court decision interpreting a rule of evidence is for the correction of errors at law. *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003). "We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion." *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). We will reverse the district court's ruling only when the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* at 408.

### III. Merits

#### A. *Does Iowa Rule of Evidence 5.412 apply?*

The State contends the district court abused its discretion by granting Tovar's motion to admit evidence of the complaining witness's consensual sexual behavior. It first asserts the court erred in ruling that rule 5.412 did not apply to sexual behavior that took place after the alleged criminal incident. Rule 5.412(d) defines "past sexual behavior" as "sexual behavior other than the sexual behavior with respect to which sexual abuse is alleged." *See State v. Gettier*, 438 N.W.2d 1, 3 (Iowa Ct. App. 1989); *see also State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004) (discussing the definition of "past sexual behavior"). We conclude rule 5.412 encompasses the sexual conduct between S.M. and D.F. after the 911 call.[2] We note that in his appellate brief Tovar concedes that rule 5.412 applies to the evidence he seeks to admit.

#### B. *Iowa Rule of Evidence 5.412*

Rule 5.412(a) provides that evidence of the past sexual behavior of the alleged victim of sexual abuse is not admissible. *State v. Edouard*, 854 N.W.2d 421, 448 (Iowa 2014). This rule is known generally as the rape shield law. *State*

---

[2] As part of the court's ruling that rule 5.412 did not apply, the court found the sexual conduct between S.M. and D.F. was part of the "res gestae" of the case. What was once known as res gestae is now referred to as the inextricably intertwined doctrine. *See State v. Nelson*, 791 N.W.2d 414, 421 (Iowa 2010). We do not apply res gestae or the inextricably intertwined doctrine, however, because the definition of "past sexual behavior" in rule 5.412(d), providing the rule applies to "sexual behavior *other than* the sexual behavior with respect to which sexual abuse is alleged," determines whether evidence comes within the ambit of the rule. *See Gettier*, 438 N.W.2d at 3. Evidence that comes within the definition of "past sexual behavior," is admissible only if it comes within the conditions found within rule 5.412. *See State v. Jones*, 490 N.W.2d 787, 790-91 (Iowa 1992).

*v. Clarke*, 343 N.W.2d 158, 160-61 (Iowa 1984). The purposes of the rule are to (1) protect the privacy of victims; (2) encourage the reporting and prosecuting of sex offenses; and (3) prevent time-consuming and distracting inquiry into collateral matters. *State v. Ogilvie*, 310 N.W.2d 192, 195 (Iowa 1981).

Rule 5.412(b)(1) provides an exception if the evidence is "Admitted in accordance with rules 5.412(c)(1) and 5.412(c)(2) and is constitutionally required to be admitted."[3] *See Edouard*, 854 N.W.2d at 449. Rule 5.412(c)(1) states a person seeking to offer evidence of specific instances of an alleged victim's sexual behavior must file a written motion to offer such evidence. The motion must be accompanied by an offer of proof. Iowa R. Evid. 5.412(c)(2). The court may then hold a hearing in chambers to determine if the evidence is admissible. *Id.* Rule 5.412(c)(3) provides:

> If the court determines on the basis of the hearing described in rule 5.412(c)(2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

**C.** *Relevancy*

If the evidence in this case is admissible, it is admissible under rule 5.412(b)(1) because it is "constitutionally required to be admitted." In addressing this constitutionality provision, the Iowa Supreme Court has stated:

---

[3] Rule 5.412(b)(2) also provides an exception if there is an issue concerning the source of semen or injury or if there is an issue of whether the alleged victim consented to sexual behavior with the same person in the past. There is no suggestion in this case that either of these two exceptions applies.

> The constitutional provisions most often implicated in cases of this type are the Sixth Amendment right of confrontation and the Fourteenth Amendment right to a fair trial. The Constitution, however, ordinarily requires only the introduction of otherwise relevant and admissible evidence. Evidence that is irrelevant is not constitutionally required to be admitted.

*Clarke*, 343 N.W.2d at 161 (citations omitted); *see also State v. Mitchell*, 568 N.W.2d 493, 499 (Iowa 1997) ("No constitutional violation occurs in excluding evidence unless such evidence is relevant.").

Evidence is considered to be relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Mitchell*, 568 N.W.2d at 498 (citing Iowa R. Evid. 5.401).

The district court found this evidence was relevant, stating S.M.'s "alleged conduct with her boyfriend between the time of the 911 call and the time police arrived could be—may not be, but could be interpreted as inconsistent with a sexual assault and consistent with consensual sex." The court also stated the evidence was relevant "as to her state of mind."

A similar issue was raised in *Commonwealth v. Sa*, 790 N.E.2d 733, 736 (Mass. App. Ct. 2003), where the defendant sought to present evidence that after the incident of sexual abuse and before the victim reported the incident to the police, she had sexual intercourse with her boyfriend. As here, the defendant claimed the evidence was relevant to the issue of credibility "because it would not be expected behavior in that period of time after she was allegedly traumatized." *See Sa*, 790 N.E.2d at 736. The Appeals Court of Massachusetts stated:

We think that the defendant's theory that a woman traumatized by rape would not have sex with her boyfriend soon after the event is speculative at best. In weighing the potential prejudice to the victim, the judge also could properly consider the possibility that the evidence would appeal to unfounded and antiquated biases about what a "virtuous" or "chaste" woman would likely do in similar circumstances.

The evidence was properly excluded because the defendant failed to show "[t]hat the theory under which he proceeds is based on more than vague hope or mere speculation." . . . The evidence that the victim had sexual intercourse after the rape was not relevant to a defense theory based on consent.

The defendant's unsupported claim, that a woman traumatized by being raped would necessarily avoid sexual congress with her partner after the crime, amounts to a general attack on the victim's credibility of the sort that the rape-shield statute was intended to prohibit. Even if evidence of sexual conduct were not prohibited by the specific statutory language of [the Massachusetts rape-shield law] such evidence was properly excluded in this case because the role that sexuality plays in the lives of two people is so varied that the nexus between sexual activity and traumatic events is necessarily speculative.

*Id.* at 737-38 (citations omitted); *see also Commonwealth v. Dickerson*, 2 Pa. D. & C.4th 297, 309 (Pa. Com. Pl. 1989) ("We are satisfied that the fact that the victim of this sexual assault reacted to her ordeal by seeking physical companionship and love is, at best, only marginally relevant to the issue of credibility. In fact, we do not believe that it is relevant at all.").

We conclude the evidence that S.M. and D.F. engaged in sexual behavior after the alleged incidence of sexual abuse is not relevant to the issue of S.M.'s credibility. As in *Sa*, Tovar's arguments about what a traumatized person would be likely or not likely to do are entirely speculative.

Tovar also contends the evidence is relevant to show the close relationship between S.M. and D.F. He states this close relationship gave S.M. a motive to "frame him" in order to gain an advantage for D.F., who had been

charged with OWI. The district court determined the evidence was not relevant to the issue of whether S.M. and D.F. "essentially concocted a scheme" to create an advantage for D.F. in facing OWI charges. The fact S.M. and D.F. engaged in sexual behavior after the 911 call does not make it more probable or less probable that they created a scheme to "frame" Tovar.

Tovar additionally states the close relationship between S.M. and D.F. gave S.M. a motive to lie about having consented to sexual behavior with him in order to preserve her relationship with D.F. He relies upon *Olden v. Kentucky*, 488 U.S. 227, 233, 109 S. Ct. 480, 484, 102 L. Ed. 2d 513, 520-21 (1988), where the United States Supreme Court stated a defendant could present evidence the alleged victim of sexual abuse was cohabiting with a man based on the defendant's theory that the cohabitation gave her a reason to lie about engaging in consensual sexual acts with the defendant in order to preserve her relationship with this man.[4] We note the court's decision was based upon the Confrontation Clause and did not implicate the rape shield law. *Olden*, 488 U.S. at 230-31, 109 S. Ct. at 483-83, 102 L. Ed. 2d at 519. Here, the evidence comes within the Iowa rape shield law, rule 5.412, and we conclude *Olden* is not directly applicable.

We determine the district court abused its discretion by finding the evidence that S.M. later engaged in consensual sex with D.F. was relevant on the issue of whether she had consented to sex with Tovar.

---

[4] During the trial the alleged victim had testified she was living with her mother. *Olden*, 488 U.S. at 230, 109 S. Ct. at 482, 102 L. Ed. 2d at 518. The defendant sought to present evidence the alleged victim was living with a man who had seen her get out of the defendant's vehicle. *Id.*

**D.** *More Prejudicial Than Probative*

After finding the evidence was relevant, the district court found the probative value of the evidence was not outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.412(c)(3). The court noted "allowing this testimony is very limited in time, it's limited to one specific instance that occurred during the course of these events and reporting them to the police, and is very close in time to the alleged assault."

We have already determined the evidence in question is not relevant, and we therefore need not take the further step of determining whether its probative value is outweighed by the danger of unfair prejudice. *See State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001) (stating court must first determine if evidence is relevant, if so, then court balances probative value against the danger of unfair prejudice). Assuming, without so deciding, that the evidence has some small probative value, it carries with it a great danger of unfair prejudice as it would suggest that because S.M. consented to sexual behavior with D.F. she would consent to sexual behavior with Tovar. *See Edouard*, 854 N.W.2d at 449 (discussing the issue of prejudicial effect). We conclude the district court abused its discretion in determining any probative value of the evidence was not outweighed by the danger of unfair prejudice.

**IV. Conclusion**

As we noted, if the evidence in this case is admissible, it is admissible because it is "constitutionally required to be admitted" under rule 5.412(b)(1).[5]

---

[5] The parties do not allege the evidence is admissible under rule 5.412(b)(2).

We have determined the evidence is not relevant, and thus, it is not constitutionally required to be admitted. *See Mitchell*, 568 N.W.2d at 498 ("No constitutional violation occurs in excluding evidence unless such evidence is relevant."); *Clarke*, 343 N.W.2d at 161 ("Evidence that is irrelevant is not constitutionally required to be admitted."). "[E]ven if evidence of specific instances of sexual conduct is relevant, the defendant has no constitutional rights to introduce that evidence when its probative value is outweighed by its prejudicial effect." *Edouard*, 854 N.W.2d at 449. We have also determined that any minimal probative value of the evidence is outweighed by the danger of unfair prejudice.

We conclude the district court abused its discretion in concluding the evidence was admissible. We reverse the decision of the district court and remand for further proceedings.

**REVERSED AND REMANDED.**